KINGS COUNTY FIRE INSURANCE COMPANY, Appellant, *v.* HANNAH STEVENS, Respondent.

*It seems,* where no trust is imposed upon real estate which a municipal corporation holds in fee, it may sell and convey without legislative authority.

When authorized by the legislature, the corporation may close a portion of a street, of which it owns the fee, without compensation to owners of lots on the street which do not front upon the portion closed, at least where there is other access to the lots of such owners.

A turnpike road was laid out running east and west across the land of N. in the city of Brooklyn; subsequently the city purchased of the turnpike company a portion of said road, "for a public street," which was thereafter used as a street.    The expense of the purchase was assessed upon the adjoining land.    N. deeded to S. the land south of the street, bounding it on the north by the south line of the street.    S. laid it out into city lots; one of these he deeded to defendant.    Of those adjoining on the east, plaintiff became the owner.    The commissioners appointed under the act of 1835 (Chap. 132, Laws of 1835) to lay out the streets of the city, with authority to close any street or part thereof, "theretofore laid out and not approved by the mayor and common council of said city," determined to close said street.    The proceedings of the commissioners were validated and confirmed in 1839 (Chap. 41, Laws of 1839); subsequently buildings were erected east of defendant's lot, which covered the land formerly occupied by the street, except a passage-way four feet wide, south of the center of the street.    Plaintiff having obtained a conveyance of this strip from the executors of N., and from the city, built a fence across it, which defendant, claiming a right of way, tore down.    De-

fendant had access to her lot by a passage-way twelve feet wide, to a
street on the west. In an action to restrain defendant from interfering
with plaintiff's occupation, *held*, that whether the turnpike company
owned the fee or an easement, plaintiff acquired the fee either by the
deed from the city or from N.'s executors ; that the city, with the author-
ity of the legislature, could close the street, and so far as the *locus in quo*
is concerned, could do so without compensation to defendant, and could
sell and convey the same ; that the street was legally closed ; that the
description in the deed from N. to S., bounding the land conveyed by the
south line of the street, conveyed no private easement but merely recog-
nized an existing public one ; that conceding the city was bound to leave
open a way by which access could be had to defendant's lot, it was not
required to leave more than one ; it might choose which of the two to
leave, and when it conveyed to plaintiff it made its choice, and plaintiff
was entitled to close the one so conveyed.

*Story* v. *N. Y. E. R. R. Co.* (90 N. Y. 122), distinguished.

(Argued December 1, 1885 ; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Su-
preme Court, in the second judicial department, entered upon
an order made September 11, 1883, which affirmed a judgment
in favor of defendant, entered upon a decision of the court
on trial at Special Term.

This action was brought to restrain defendant from entering
upon a strip of land to which plaintiff claimed title, and from
tearing down fences or other structures erected thereon, which
the complaint alleged defendant had done, and threatened to
continue to do, under a claim of a right of way over the *locus
in quo*.

Under acts of the legislature (Chap. 86, Laws of 1805, and
chap. 20, Laws of 1806) the Wallabout and Brooklyn Toll Bridge
Company established a turnpike road, known as the Wallabout
bridge road, running from the East river, through the city of
Brooklyn. It ran through the lands of one Nostrand. In Jan-
uary, 1835, Nostrand conveyed the land south of the road to
one Sandford, bounding him on the north by the south line of
said road. Sandford caused the land so conveyed to be laid out
into city lots ; one of these was conveyed in February, 1835,
and is now owned by the defendant ; five lots lying east and
between defendant's lot and Nostrand avenue were also on the

Statement of case.

same day conveyed by Sandford, and are now owned by plaintiff. In September, 1835, the city, under authority of an act of the legislature (Chap. 188, Laws of 1835), purchased the turnpike road; by the said act it was "to remain free to the public as a street," and by the deed it was conveyed "as and for a street." The expense of the purchase was assessed, as authorized by said act, upon the adjoining land. The commissioners appointed under the act, chapter 132, Laws of 1835, to lay out the streets and avenues of the city, determined to close the Wallabout road. Thereupon maps and survey were filed, and their action was "confirmed and declared valid and effectual by chapter 41, Laws of 1839. The various streets and avenues were opened, graded and paved; buildings were erected on the portion of the old Wallabout road lying west of Nostrand avenue, leaving open a passage-way four feet south of the center of the old road. West of defendant's lot is Sandford street; from said lot to the street a passage-way twelve feet wide remains open. Plaintiff obtained from the executors of Nostrand, and from the city quit-claim deeds of the south half of the Wallabout road opposite his lots, and built a fence across the open space; this defendant tore down, and continued to do so as it was rebuilt, claiming a right of way over it.

Further facts appear in the opinion.

*William C. De Witt* for appellant. The power to discontinue highways without compensation resides, and has always resided, in the legislature. (R. S. [5th ed.], part 1, art. 4, chap. 16, §§ 82, 93, 94, 108, 111, 114, 115, 120, 133; Thomp. on Highw. 183; *Jackson* v. *Hathaway*, 15 Johns. 447; *Bisbee* v. *Mansfield*, 6 id. 84; *People* v. *Nichols*, 51 N. Y. 470, 475; *Carris* v. *Com. of Waterloo*, 2 Hill, 443, 444-5.) The public may make such use of their easement as they choose, or abandon it altogether, and any consequential damages will be irrecoverable. (*Gosler* v. *Georgetown*, 6 Wheat. 593; *Smith* v. *Washington*, 20 How. [U. S.] 135; *Wilson* v. *Mayor, etc.*, 1 Denio, 595; *People* v. *Kerr*, 27 N. Y. 211, 212, 213; *Metropolitan Board* v. *Heister*, 37 id. 672; *Zimmerman* v. *Union Canal*, 1 W. & S.

346; *Sus. Canal Co.* v. *Wright*, 9 id. 9; *Tracy* v. *City of Indianapolis*, 17 Ind. 267; *Matter of Furman St.*, 17 Wend. 649, 655, 656, 659; *Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 245; *Kellinger* v. *Forty-second St. R. R. Co.*, 50 id. 209.) A way of ingress and egress being left open to the defendant's property, the discontinuance of the old road at every other point is, so far as defendant is concerned, valid. (*Fearing* v. *Irwin*, 55 N. Y. 486; *Coster* v. *Mayor of Albany*, 43 id. 414, 415; *Smith* v. *City of Boston*, 7 Cush. 254; *Wheeler* v. *Clark*, 58 N. Y. 267, 268, 270; *Jackson* v. *Hathaway*, 15 Johns. 447.) The sovereign, *i. e.*, the people, having, as matter of fact, abandoned the Wallabout road, the land in suit reverted to the plaintiff as owner of the fee. (*Dunham* v. *Williams*, 36 Barb. 136, 162, 163; *Hooper* v. *Utica, etc., Turnpike Co.*, 12 Wend. 371; *Heard* v. *Brooklyn*, 60 N. Y. 242; *Jackson* v. *Hathaway*, 15 Johns. 447; *St. Vincent Asylum* v. *Troy*, 12 Hun, 317; *Corning* v. *Gould*, 15 Wend. 529, 539, 541, 543.) The learned judge at Special Term erred in holding that the defendant had some private right of way over the *locus in quo*, which survived the extinguishment of the public easement. (*Heard* v. *Brooklyn*, 60 N. Y. 248; *Child* v. *Starry*, 4 Hill, 374; *Witter* v. *Harvey*, 1 McC. 67; *Tyler* v. *Hausnard*, 11 Pick. 194; *Wheeler* v. *Clark*, 58 N. Y. 267.) Assuming that the lands in suit were taken by the company, either by purchase or condemnation, pursuant to the provisions of the act of 1805, only an easement therein was acquired. (*Dunham* v. *Williams*, 36 Barb. 136, 160, 161, 162, 163; Laws of 1847, chap. 210, § 30; Laws of 1806, chap. 86, § 1; *People* v. *Lawrence*, 54 Barb. 589, 618, 619; *The Northern Turnp. Road Co.* v. *Smith*, 15 id. 355; *Hooker* v. *Utica, etc., Minden Turnp. Co.*, 12 Wend. 371; *Heard* v. *Brooklyn*, 60 N. Y. 242; *Matter of John and Cherry Sts.*, 19 Wend. 659, 675; *McMahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *Jackson* v. *Hathaway*, 15 Johns. 447; *Heath* v. *Barmore*, 50 N. Y. 302; Laws of 1835, chap. 132; chap. 188; Laws of 1839, chap. 141.) The defendant has ample remedy for any damage she may suffer in the closing of

the Wallabout road against the city of Brooklyn. (*Sage* v. *Brooklyn*, 60 N. Y. 180; *Hardy* v. *Brooklyn*, 90 id. 435; *Fitzpatrick* v. *Brooklyn*, 80 id. 358.)

*Jesse Johnson* for respondent. The conversion of a turnpike road into a public and open street or highway was valid and effectual. Such proceeding is a mere change of use within the scope of the original acquisition. (*Heath* v. *Barmore*, 49 Barb. 406, 409; 50 N. Y. 302.) Whenever a lot or plot of land is severed by a grant, which conveys a part, and described a remaining, contiguous and appropriate part as a street or highway, the grant carried with the fee conveyed, an appurtenant right over the appropriate and contiguous land retained. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 144, 145; *Taylor* v. *Hoffer*, 62 id. 649; *Wiggins* v. *McCleary*, 49 id. 346, 348.) The Wallabout bridge road became a street or highway by virtue of a special assessment laid upon and paid by the lands immediately adjoining. The lands thus charged and that contributed the fund that made the street or highway, thereby obtained a special property therein. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122, 173, 174; *Mahady* v. *Bushwick R. R. Co.*, 91 id. 153; *People* v. *Brooklyn F. & C. I. R. R. Co.*, 89 id. 92.) If the lot in question, by paying an assessment, obtained any rights in this road, it obtained just what it paid for; it obtained the right to have this road kept open so as to be a road or highway past this lot. (Hill. on Inj. 314; *Higbee* v. *C. & A. R. R. Co.*, 19 N. J. 28; *Hartshorn* v. *Inhabitants of So. Reading*, 3 Allen [Mass.], 501; Girard on City Water Rights and Streets, 145; *Fearing* v. *Irwin*, 55 N. Y. 486, 490; Wash. on Ease. marg. p. 162–165; *Parker* v. *Farmingham*, 8 Metc. 200.) Apart from any constitutional question, that the act of 1835 (Chap. 132), did not authorize the closing of this road. (*Matter of Sackett St.*, 74 N. Y. 102.) The land that the turnpike company held, is held in fee, and Nostrand retained no reversionary interest therein. (*Armstrong* v. *Park Com.*, 45 N. Y. 234; *Heath* v. *Barmore*, 50 id. 302; *McDonald* v. *Mayor*,

*etc.*, 68 id. 23; *Starin* v. *Town of Genoa*, 23 id. 449; *Donovan* v. *Mayor, etc.*, 33 id. 291.) The new deeds plaintiff relies on were given while there was a clear adverse possession, held and established under an express adjudication. Under such a possession they were clearly in violation of the statute. (2 Edm. Stat. 713, § 6; 4 R. S. 691, § 6.)

Finch, J. Whether the turnpike company took a fee or an easement, and so, whether the absolute ownership remained in Nostrand as reversioner, or passed to the city of Brooklyn by the conveyance of the company, need not be considered; for the plaintiff holds a deed both from Nostrand and the city, and took the fee by one route or the other. Of course this statement implies that the city could, with the aid of the legislature, close the street without specific compensation to the defendant, and did do so effectually, as against her, so far as the *locus in quo* is concerned; and also that the street being closed, and the land freed from any special trust, the city, if it took the fee, became the owner as if a private person and discharged from any public use, and so could sell and convey it without legislative aid. That the last proposition is correct seems to be clearly intimated in *Brooklyn Park Com.* v. *Armstrong* (45 N. Y. 234, 243), where it is said that, if the city took the fee of land free from a trust, it could convey when and as it chose, but could only be permitted so to do when a trust existed, by the sanction of the legislature. Except when restrained by their charters or the statute, all corporations have the absolute *jus disponendi* (2 Kent's Comm. 281); and where no trust is imposed upon the property which a municipal corporation holds in fee, it has an inherent right to sell and convey, and needs no legislative aid. (Dill. on Mun. Corp., § 445; *People* v. *City of Albany*, 4 Hun, 675, 679; *Aiken* v. *West. R. R. Co.*, 20 N. Y. 370.) The question of title in this case, therefore, ends in one inquiry whether the legislature could and did authorize the closing of the street effectually, as against the plaintiff, without making compensation. That question is settled by *Wheeler* v. *Clark* (58 N. Y. 267). The effort on the part of the respondent is to distin-

guish that case by insisting upon certain limitations of the general power which were not then in question, but are made applicable by the facts before us. It is claimed that the doctrine of *Story* v. *N. Y. Elevated R. R. Co.* (90 N. Y. 122) preserved to this defendant as an abutting owner, a property in the street of which she could not be deprived without compensation, and although she held no covenant from the city, yet her land having been assessed for the cost of the street when purchased of the turnpike company, her property right is equally clear and certain. We need not consider or discuss that question, for the closing of the street here in controversy is in front of plaintiff's premises and not of hers, and does not take from her light or air or convenience of access. No right appurtenant to her lot as abutting on the street has been infringed. But it is further said that the conveyance and map of Sandford, from whom she derived title, dedicated the street to open and permanent public use. But he could not dedicate what he did not own. He bought of Nostrand who bounded him by the south line of the street, and neither by act, map or covenant became responsible for the continuance of the street, or forfeited his own right of possible reversion in fee. It is of no consequence what the defendant's right might be as against Sandford or those claiming under him, for it is a right prior and superior to his which the plaintiff owns and is seeking to enforce. It is claimed, however, in avoidance of this difficulty that Nostrand himself, while owner of the fee in the road, conveyed the adjoining property to Sandford, bounding his grant by the south line of the road, and that such reference to it as an open highway estopped him from any act tending to close it and bound him as owner of the fee to keep it open. But that contention is also answered in *Wheeler* v. *Clark* (*supra*), where it was held that much stronger language merely recognized the public right and bound no one for its continuance. The same doctrine was affirmed in *Jackson* v. *Hathaway* (15 Johns. 447). The deed conveyed no private easement, but merely recognized an existing public one, which has been lost. It is claimed also that another limi-

tation upon the right of the city, with the sanction of the legislature, to close the street, protects the defendant, and is a prohibition against such complete environment as prevents access to the premises without a trespass. But the proof shows no such state of facts. A means of access remains. The way is open from defendant's premises to Sandford street; a way twelve feet wide; while the one here in question is but four feet in width. The rule preserves access, but does not give two modes of access and a double right of way. The city might choose which to leave, and when it conveyed to plaintiff the fee of the end toward Nostrand avenue, it made its choice to close that part of the street, leaving open the access from Sandford street. Until that is obstructed the defendant is not surrounded by private rights barring access to her property. It is again insisted that the act of the legislature was insufficient to warrant the closing of this street, because the act of 1835 only authorized the commissioners to close roads not approved by the city, and this road, bought of the turnpike company, was approved by the city. But the act of 1839, passed after the commissioners closed this road, validated and confirmed all their acts.

We discover no reason, therefore, for doubting the validity of the action which closed this road at the point in question and toward Nostrand avenue, or for denying plaintiff's title to the land. An assertion of title in the defendant, by prescription, resulting from an adverse user for twenty years or more, appears in the opinion of the General Term. There was no finding of fact by the trial court establishing such adverse user, nor any finding of law that defendant had a right of way over the disputed premises by prescription; nor does the evidence warrant such conclusion. The defendant has been in the occupation of her lot, and her witness, Samuels, of his, only about eleven or twelve years. What their predecessors did or claimed does not appear. It is shown that the present owners filled in and improved the roadway, but before their purchase, the proof is, that it was a hollow occasioned by the higher grade and curbing of Nostrand avenue and filled with water. It is also apparent that structures were built upon the old roadway, without resistance

from anybody, destroying it utterly, as a street, at its junction with that avenue, and narrowing the possible way to the four feet now in dispute. There is a casual statement of the witness Shiel, who had lived for thirty years on another block fronting the Wallabout road and between Sandford and Walworth streets, that the property-owners on the road had no other way to go in or out " and have used it that way ever since." His statement is not shown to refer to the Nostrand avenue end, and could not have referred to that, for he distinctly says, that after the avenues were built " the surface water came down and filled that place up until these ladies and other folks built between Sandford and Nostrand." We are of opinion that no sufficient evidence was given to warrant a conclusion of title by prescription.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.