Joel J. Baily, Henry C. Lea, Theodore Wernwag, Francis B. Reeves, Philip J. Ritter, Jacob A. Datz and John M. Campbell, Appellants, *v.* The City of Philadelphia, Charles F. Warwick, Mayor of said city, Thomas M. Thomas, Director of Public Works of said city, and John M. Walton, Controller of said city.

*Municipalities—Supplying public places and private citizens with gas for lighting purposes.*

A city is not required by its municipal duty to supply its citizens with light in the streets and public places, and if it assumes the performance of that function, it acts under authority merely, as a business corporation, and not under municipal obligation.

*Municipalities — Cities of the first class—Power to supply gas—Act of June 1, 1885—Lease of gas works.*

The Act of June 1, 1885, P. L. 37, relating to the government of cities of the first class does not take away nor in any degree lessen any municipal authority previously lodged in the city, still less any merely business corporate power, such as the supplying of gas light to its citizens.

Under the Act of June 1, 1885, P. L. 37, a city of the first class has a right to lease its gas works to a private corporation for a period of thirty years, and to covenant in the lease that it will do nothing by ordinance or otherwise which will in any way interfere with, or limit. restrict or imperil the exclusive right vested in the lessee. Such a lease does not in respect to the public lighting delegate a public legislative power, nor in respect to the private lighting confer a monopoly on the lessee.

*Municipalities—Loans—Gas works—Impairing obligation of contract.*

A municipality authorized a loan for the extension of its gas works, and in the ordinance required the retention by the trustees of the gas works of a certain per cent of the amount of the loan annually, and its payment into the city treasury; whereupon the city undertook to apply part of it to the interest on the loan, and to pay the other part into the sinking fund. There

was no pledge of the gas works to secure the loan, and the ordinance expressly provided that a prior ordinance which had pledged the gas works as security should not apply to this loan. The city subsequently leased the gas works to a private corporation. On a bill in equity to annul the lease, there was no averment or proof that the sinking fund had not been kept up by appropriation from the city treasury from time to time as required by law. *Held,* that without such averment and proof it did not appear that any obligation of the loanholder's contract had been impaired by the lease of the gas works.

Argued Jan. 24, 1898.   Appeal, No. 448, Jan. T., 1897, by plaintiffs, from decree of C. P. No. 4, Phila. County, Nov. 30, 1897, No. 700, refusing preliminary injunction.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity to declare illegal and void a lease of the Philadelphia Gas Works.

The bill sets forth that the plaintiffs are residents of the city of Philadelphia, owners of real and personal property situated therein, are payers of state and city taxes, and are consumers of gas in said city; and also that one of their number, to wit: John M. Campbell, is the holder and owner of a certificate of loan of the city of Philadelphia, issued for the extension of its gas works; that on November 9, 1897, the select and common councils of the city of Philadelphia passed an ordinance authorizing the execution of a contract with The United Gas Improvement Company, its successors and assigns, by the city of Philadelphia, for the lease to the former of the gas works, street mains, and other real and personal property used for and in connection with the manufacture and distribution of gas in the city of Philadelphia; for the operation, maintenance, enlargement, extension and betterment of the same; for the manufacture and distribution of gas in said city by the said company, its successors and assigns, and for the exclusive supply by said lessees and its assigns of all gas to be supplied to consumers during the term of the lease; that for many years prior to the act of April 2, 1790, and at all times since that act, the lighting of its public streets and squares has been done by the city of Philadelphia under statutory power, and for more than sixty years past the said city has owned its gas works and controlled and operated the same, not only for public lighting, but for the

supply and distribution of gas to and for the benefit of its citizens and taxpayers; that by an act approved June 1, 1885, the said gas works were placed under the direction, control, and administration of the department of public works, and councils were prohibited from passing any ordinances directing or interfering with the exercise of the executive functions of the mayor, departments, boards, or heads or officers of said city; that if the said ordinance should become operative, and the lease thereunder be executed, the gas works and the supply and distribution of gas would pass from under the direction, control, and administration of the department of public works, and would remain under the direction, control and administration of The United Gas Improvement Company and its assigns, and of officials other than the director of public works and his appointees, and that the executive functions of the director of public works and of the department of which he is the head will for the term of the lease be suspended; that it is the true intent and meaning of the act of June 1, 1885, that the gas works and the supply and distribution of gas shall be under the control of the department of public works, and that no ordinance of councils shall direct or interfere with or impair the exercise by said department of said functions; that the said ordinance is wholly illegal; that the action proposed to be taken by virtue thereof in the execution of the lease is wholly illegal; that the abandonment by the city of Philadelphia and the director of public works of the direction, control and administration of the gas works and the supply and distribution of gas is contrary to law; that one of the plaintiffs is the holder and owner of a certificate of loan, issued by the city of Philadelphia for the extension of its gas works; that by the provisions of the ordinance authorizing said loan it is provided that there shall be annually retained out of the receipts for the sale of gas and other products of the said gas works a certain sum to be used in payment of the interest on said loan and in the creation of a sinking fund for the redemption of said loan at maturity; and that the contract and lease authorized by the ordinance of November 9, 1897, impairs the obligation of the contract existing between the city of Philadelphia and said loanholders by diminishing the sources from which said loan and the interest thereon are payable.

The bill prays that the ordinance and lease thereunder may

be declared illegal and void, and that the defendants be enjoined from executing and delivering the said lease.

The defendants filed a demurrer and answer to the effect that the complainants "have not set forth any matter, cause or thing sufficient in law" whereby the respondents should be enjoined as prayed for, and also denying an allegation in the bill to the effect that the plaintiffs will be injured and suffer pecuniary loss by the acts of the defendants done or threatened, and also denying another averment in the bill in which it is alleged that the plaintiffs are informed that an offer has been made by a responsible corporation whereby the city will receive $10,000,000 more for the gas works than it will receive if the proposed lease to The United Gas Improvement Company should be executed or delivered.

Section 3 of the ordinance of December 26, 1868, is as follows:

"Said trustees shall, on or before the thirty-first day of December and the thirtieth day of June in each and every year, until the said loan is paid, retain out of their receipts for the sale of gas and other products of the said gas works, the sum of four per centum on the amount of said loan, for which certificates may have been issued, which they shall pay to the city treasurer, who shall apply three per centum thereof to the payment of the interest of the said loan as the same may fall due, and to no other purpose whatever, and the remaining one per centum shall be paid over by the said treasurer to the commissioners of the sinking fund, who shall invest the same and its accumulations in the loans of the said gas works, or in the other loans of the city of Philadelphia, as 'a sinking fund which is hereby specifically pledged to the payment of said loan, and any surplus remaining after the payment of said loan shall be applied by the commissioners of the sinking fund toward the extinguishment of the other loans to the said gas works, if any; otherwise of the funded debt of the city of Philadelphia.'"

Section 4 of said ordinance further provides as follows:

"That the terms and provisions of the ordinance entitled 'An ordinance for the further extension and management of the Philadelphia Gas Works, approved June 17th, 1841,' shall not apply in any way or manner to this loan, and that nothing contained in this ordinance shall interfere with or obstruct the city of Philadelphia in taking possession of said gas works when-

ever the councils of the said city may, by ordinance, determine to do so."

The ordinance of June 17, 1841, sec. 1, was as follows :

" The faith of the city, the said sinking fund, and the build-ings, apparatus, fixtures and the income and profits of the said gas works shall be and they are hereby pledged for the punctual payment of the interest, and for the ultimate reimbursement of the principal of all the loans made for or on account of said gas works, as the same shall become due ; and in order that provision may be made for the same, the said trustees are hereby authorized and required to set apart all the clear net profits that may remain after paying the interest on the said several loans, to constitute a sinking fund, which said sinking fund, with the interest thereon, shall be invested from time to time in the loans to said gas works, or in the loans to the city of Philadel-phia; and the said sinking fund shall be kept separate and distinct from the other funds of the said works, and the said trustees shall furnish annually, in the month of January, to the select and common councils, a statement of the amount thereof, and of the stocks in which the same shall be invested."

The plaintiffs moved for a preliminary injunction.

The court in an opinion by ARNOLD, P. J., entered the de-cree "injunction refused."

*Error assigned* was in refusing to grant a preliminary injunc-tion.

*George Tucker Bispham* and *Joseph L. Caven*, with them *John C. Bell* and *Peter Boyd*, for appellants.—The ordinance is an interference with certain executive functions which are expressly committed, by the act of June 1, 1885, to the department of public words, and with which councils are forbidden to inter-fere: Act of March 11, 1789, 2 Sm. L. 462; Act of June 1, 1885, P. L. 37 ; Western Saving Fund Society v. Phila., 31 Pa. 175 ; Wheeler v. City, 77 Pa. 338 ; Carr v. Northern Liberties, 35 Pa. 324 ; Lehigh County v. Hoffort, 116 Pa. 119 ; McDade v. Chester, 117 Pa. 414 ; Erie v. Schwingle, 22 Pa. 384 ; White v. Meadville, 177 Pa. 643 ; Com. v. De Camp, 177 Pa. 112 ; Warwick's Opinions, 1889, p. 48.

The ordinance assumes in respect to the public lighting to delegate a public legislative power, and in respect to the private lighting to confer a monopoly on the grantee; and in both cases to bind the discretion of councils for a long term of years; Dillon on Municipal Corporations, sec. 96; Schenley v. Allegheny, 36 Pa. 29; McKeesport v. Railway, 2 Pa. Superior Ct. 249, and St. Louis v. Clemens, 43 Mo. 395; Matthews v. Alexandria City, 68 Mo. 115; Oakland v. Carpentier, 13 Cal. 540; Lord v. Oconto, 47 Wis. 386; State v. Hauser, 63 Ind. 155; Thompson v. Schemerhorn, 6 N. Y. 92; Clark v. Washington, 12 Wheat. 50; Strawbridge v. Phila., 2 Penny. 419; Garrison v. Chicago, 7 Bissell, 480; Minneapolis Gas Light Co. v. Minneapolis, 36 Minn. 159; Gale v. Kalamazoo, 23 Mich. 344; Brenham v. Brenham Water Co., 67 Texas, 542.

It is a well established principle that a municipal corporation cannot divest itself of the legislative discretion conferred upon it by law.   It cannot surrender its legislative discretion by con tract, nor bind itself not to exercise it whenever it may become necessary: Cooley on Constitutional Limitations, *206; Brick Presbyterian Church v. New York, 5 Cowen, 540; Coates v. New York, 7 Cowen, 585; N. Y. v. Railroad, 32 N. Y. 273; Richmond v. Gas Light Co., 59 N. Y. 228; Britton v. New York, 21 How. Pr. 251; Goszler v. Georgetown, 6 Wheat. 593; Saginaw Co. v. Saginaw City, 28 Fed. Rep. 535; Brenham v. Water Company, 67 Texas, 542; State v. Cincinnati Gas Co., 18 Ohio, 262; State v. Milwaukee Gas Light Company, 29 Wis. 460; Fay, Petitioner, 15 Pick. 255; City of Indianapolis v. Gas Light, etc., Co., 66 Ind. 396.

It is well settled principle of law that no municipality has the power, except by express legislative authority to create a monopoly in the manufacture and supply of gas, or to grant the exclusive right to lay gas pipes and mains in its highways: 2 Dillon on Municipal Corp., sec. 692; Citizens G. & Mining Co. v. Town of Elwood, 20 Am. & Eng. Corp. Cases, 263; State v. Cincinnati Gas Light & Coke Co., 18 Ohio, 262; Davenport v. Kleinschmidt, 13 Pac. Rep. 249; Brenham v. Brenham Water Co., 4 S. W. Rep. 143; New Orleans Gas Co. v. Louisiana Light and Heat Co., 115 U. S. 650; Illinois v. City of St. Louis, 2 Dillon C. C. Rep. 70; Baird v. Rice, 63 Pa. 492.

The plaintiffs as taxpayers have a standing in court to restrain

the execution of this contract and lease by their public servants : Wheeler v. City, 77 Pa. 338; Erie's Appeal, 91 Pa. 398; Mott v. Railroad, 30 Pa. 9; Brooke v. City, 34 W. N. C. 341; McIntyre v. Perkins, 9 Phila. 484; Sank v. City, 4 Brewster, 133; Hill v. Commissioners, 1 Pars. 501; Pepper v. City, 40 W. N. C. 377.

The ordinance impairs the obligation of the city's contract with certain holders of its bonds : Western Saving Fund Society v. Phila., 31 Pa. 191.

*James Alcorn,* assistant city solicitor, with him, *John L. Kinsey,* city solicitor, and *Ernest Lowengrund,* for appellees.—The ordinance of November 12, 1897, and the contract of lease authorized thereby, are not invalid by reason of the provisions of articles IV. and XVI. of the act of June 1, 1885 : Com. v. DeCamp, 177 Pa. 112; Dillon on Munic. Corp. (4th ed.), 575–580; Burton's Appeal, 93 Pa. 214; Morawetz on Corp. (2d ed.), 367; Green's Brice Ultra Vires (2d ed.), 66–69; Western Saving Fund v. Phila., 31 Pa. 175; Wheeler v. City, 77 Pa. 338; Lehigh Water Co.'s Appeal, 102 Pa. 515; White v. Meadville, 177 Pa. 643; Indianapolis v. Gas Light Co., 66 Ind. 396; Atlantic City Water Works v. Atlantic City, 39 N. J. Eq. 367; Cooley on Taxation (2d ed.), 688; Garrison v. Chicago, 7 Biss. 480; Water Works Co. v. Prager, 129 Pa. 605; Tiedeman on Munic. Corp., 144 a; N. O. Gas Co. v. La. Light Co., 115 U. S. 650; Gas Co. v. Parkersburg, 30 W. Va. 435; U. S. v. Claflin, 97 U. S. 546; Rawson v. Rawson, 52 Ill. 62; Hendrix's Account, 146 Pa. 285; Rymer v. Luzerne, 142 Pa. 108.

The contract of lease is not rendered invalid because it is made for a term of thirty years, with a provision that the city will not do anything to interfere with the exclusive rights of the company during that period : Montgomery Gas Light Co. v. City Council of Montgomery, 87 Ala. 245; Grant v. Davenport, 36 Iowa, 396; Walla Walla Water Co. v. Walla Walla, 60 Fed. Rep. 957; Le Claire v. Davenport, 13 Iowa, 210; Fergus Falls Water Co. v. Fergus Falls, 65 Fed. Rep. 586; Jersey City Gas Co. v. Dwight, 29 N. J. Eq. Rep. 242; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650; Louisville Gas Co. v. Citizens Gas Co., 115 U. S. 683; New Orleans Water

Works Co. v. Rivers, 115 U. S. 674; Brown v. Duplessis, 14 La. Ann. 842; New Orleans Gas Light Co. v. New Orleans, 42 La. Ann. 188; Higgins v. San Diego, 45 Pac. 824; Girard Insurance Co. v. City, 88 Pa. 393; Strawbridge v. Phila., 2 Pennypacker, 419.

Neither at the present time nor by the present parties can the question of its validity be raised upon the ground of the exclusive nature or the duration of the privilege granted: Erie's App., 91 Pa. 398; Baird v. Rice, 63 Pa. 489; Sharpless v. Mayor, 21 Pa. 147; Grant v. Davenport, 36 Iowa, 396; Waco Water & Light Co. v. Waco, 27 S. W. Rep. 675; People's Gas Light Co. v. Jersey City, 46 N. J. L. 297; East St. Louis v. East St. Louis Gas L. & C. Co., 98 Ill. 415; Grand Rapids Elec. L. & P. Co. v. Grand Rapids Edison E. L. & F. G. Co., 33 Fed. Rep. 659; Saylor v. Pa. Canal Co., 183 Pa. 167; Buck Mountain Coal Co. v. Lehigh C. & N. Co., 50 Pa. 91; Sparhawk v. Union P. Ry. Co., 54 Pa. 401; C. V. R. R. Co.'s Appeal, 62 Pa. 218; Larimer & Lincoln St. Ry. Co. v. Larimer St. Ry. Co., 137 Pa. 533; Rex v. Directors of Bristol Co., 12 East, 429; Bigelow v. Bridge Co., 14 Conn. 565; Dwenger v. Chicago Ry. Co., 98 Ind. 153; Harvard College v. Stearns, 15 Gray (Mass.), 1; Truesdale v. Grape Sugar Co., 101 Ill. 561; Dillon on Munic. Corp. (4th ed.), sec. 914–922; Craft v. Jackson County, 5 Kans. 313; Starin v. Edson, 112 N. Y. 206; Merrian v. Yuba County, 72 Cal. 517; Droz v. East Baton Rouge, 36 La. Ann. 307; Kilbourne v. St. John, 59 N. Y. 21.

The contract of lease under the ordinance of November 12, 1897, is not a delegation of municipal authority, nor does it interfere with the police powers: Stein v. Bienville Water Co., 34 Fed. Rep. 145; National Water-Works Co. v. Kansas City, 28 Fed. Rep. 921; Elliott on Roads and Streets, 334 (note 2); Carother's Appeal, 118 Pa. 468; Warren Gas Light Co. v. Penna. Gas Co., 161 Pa. 510; Quincy v. Bull, 106 Ill. 337.

The court will not interfere by injunction with the discretion of the mayor and councils as exercised in the enacting of this ordinance, or in the execution of the contract provided for therein: Chandler v. Gardner, 2 Pa. C. C. 407; Brown v. City, 17 Phila. 298; Wheeler v. Rice, 83 Pa. 232; Semmes v. Mayor, 19 Ga. 471; Interstate Brick and Paving Co. v. City et al., 164 Pa. 477; American Pavement Co. v. Wagner, 139

Pa. 623 ; Douglass v. Commonwealth, 108 Pa. 559 ; Findley v. Pittsburgh, 82 Pa. 352; Commonwealth v. Mitchell, 82 Pa. 343; City of Anderson v. O'Connor, 98 Ind. 168; Brush v. City of Carbondale, 78 Ill. 74; Dillon on Municipal Corp. (4th ed.), secs. 94, 95, 475, 832.

The ordinance of November 12, 1897, does not conflict with or impair the rights acquired under the ordinance of December 26, 1868, authorizing the issue of a loan for the extension of the gas works : United States v. Fort Scott, 99 U. S. 152.

The ordinance is not unconstitutional : Norristown v. Railway Companies, 148 Pa. 87 ; Baldwin v. Philadelphia, 99 Pa. 164 ; Klingler v. Bickel, 117 Pa. 326 ; Commonwealth v. Walton, 182 Pa. 373 ; McHale v. Transit Co., 169 Pa. 416.

*John G. Johnson* and *Charles E. Morgan, Jr.*, for the United Gas Improvement Company.

OPINION BY MR. JUSTICE MITCHELL, February 21, 1898:

The gas works are the property of the city of Philadelphia, not as a municipality, but as a business corporation. However much the idea that the city is not required by its municipal duty to supply its citizens with light in the streets and public places, may seem to fall below the modern conception of a city, it is beyond question on settled legal principles, that in the performance of that function the city acts under authority merely and not under municipal obligation. This was the rule of the common law, and no statute in reference to the city of Philadelphia has altered it. Hence the city may change its mode of action, or cease to act altogether, in its discretion, and the discretion is purely legislative. The courts have no power to interfere unless the proposed action contravenes some express statute, or violates some binding contract. These principles are elementary and need not be enlarged upon, since they are conceded by the learned counsel for appellants, and the corollary admitted that the lease now sought to be enjoined would have been clearly within the power of the city prior to the Act of June 1, 1885, P. L. 37, commonly known as the Bullitt Bill.

The argument of the appellants is arranged under three heads, and may be conveniently considered in that order.

First, that the ordinance for the lease of the gas works is an

interference with the executive functions of the department of public works, and therefore within the prohibition of the act of June 1, 1885. Of that act this Court has already declared that "the subject with which it deals is the administrative government of cities of the first class, and its manifest purpose was to reform existing abuses in the executive department of the only city of that class: " Com. ex rel. v. DeCamp, 177 Pa. 112. The particular provisions of the act which are relied on by the appellants are art. I., sec. 1, "There shall be the following executive departments: . . . . Department of Public Works;" art. IV., sec. 1, "The Department of Public Works shall be under the charge of one director who shall be the head thereof. Gas works owned and controlled by the city, the supply and distribution of gas . . . . the lighting of streets, alleys, and highways . . . . shall be under the direction, control, and administration of the Department of Public Works;" and art. XVI., "Councils shall by general ordinances provide for the proper and efficient conduct of the affairs of the city by the mayor and several departments, and the boards thereof; but they shall not pass any ordinances directing or interfering with the exercise of the executive functions of the mayor and departments, boards or heads or officers thereof." These provisions do not take away nor in any degree lessen any municipal authority previously lodged in the city, still less any merely business corporate power. They merely regulate the operation of its executive and legislative functions as to such public property of the enumerated classes as the city may at any time have. The prohibition to councils in article 16 is against interference with "the exercise of the executive functions" of the departments. The lease or sale of the gas works is not an executive function. If it was it would belong to the director of public works as the head of the department. But no one would contend that the director has any power to make a sale or such a lease. That is a parting with the title and possession of the city, which can only be done by a legislative act. As a legislative act it is within the clear power of the city. The right to change the property which is the instrument through which the city exercises its powers, is inherent in its ownership, whether municipal or merely corporate, unless prohibited by contract or by the terms of a trust upon which it was acquired. But to avoid

all doubts the right of alienation is given in express words in the charter of 1789, all the powers granted in which were preserved by the consolidation act (Act of February 2, 1854, sec. 6, P. L. 25) and which appears to be still in force: Com. v. Walton, 182 Pa. 373. And the right is not taken away by the act of 1885, which, as already said, merely regulates the mode of exercise of executive, and incidentally of legislative, functions without changing the rights which appertain to those functions.

But it is urged that although the city may sell and change the specific property, it cannot abdicate the function, and must therefore substitute other property through which its control and operation of the franchise may be continued, and the analogy is relied on of a trustee with a power to sell, who may by virtue thereof change the subject-matter but cannot destroy the trust. This brings us back again to the preliminary question on which the whole case rests, whether supplying the public places and private citizens with gas for lighting purposes is a strictly municipal function, or merely a power conferred on the city as a corporation. If the former, it is a duty as well as a power, and cannot be abandoned; if the latter, it is an authority only and may be exercised or not at the city's option. Although the appellants start out with the concession that the lease in question would have been within the city's powers prior to the act of 1885, yet the elaborate and ingenious argument for them rests upon the contention that the lighting of the city, at least since that act, is a municipal duty, and though presented in different aspects and from different points of view, the argument constantly comes back to this contention, for without it there is confessedly no ground for the case to rest upon. But for reasons already stated, we are of opinion that the act of 1885 made no change in the city's municipal powers, either inherent or statutory, but merely regulated their exercise so far as related to executive officers, and incidentally to such purpose restrained what had become legislative usurpation. Under that act, so long as the city owns and operates the gas works, it must do so through the department of public works, but there is no compulsion upon the city to continue the manufacture and sale of gas at all, or to do it through its own officers, if in its legislative judgment it is no longer expedient to do so.

The second proposition of the appellants is that the ordinance assumes in respect to the public lighting to delegate a public legislative power, and in respect to the private lighting to confer a monopoly on the grantee ; and in both cases to bind the discretion of councils for a long term of years.   It is manifest that this proposition in the use of the phrase " public legislative power " comes back, as already indicated, to the contention that public lighting is a municipal duty.   It is true that it is a legislative power, in the sense that it is the exercise of the will of the owner with respect to ownership of the property. If such ownership was coupled with a municipal duty such duty could not be escaped by lease or other form of delegation. But the gas works, as already discussed, are held by the city as a business corporation.   If the use of gas should be so far superseded as to make its manufacture and sale unprofitable, there is no compulsion on the city to continue it or to embark in any new venture for the supply of a different light.   And if the management and operation of the works can be more profitably or more conveniently carried on by a lessee, instead of by the city's own immediate servants, the city in making a lease is determining a business question in its legislative corporate capacity, just as any private corporation might do, but is not delegating any municipal power, legislative or other, which involves municipal duty.

In regard to the conferring of a monopoly, the appellants cite the provision in the lease that " the city of Philadelphia agrees that during the term of this contract it will do nothing by ordinance or otherwise which will in any way interfere with, or limit, restrict or imperil this exclusive right hereby vested in the said United Gas Improvement Company, its successors or assigns," and claim that this creates a monopoly which is void on the ground of public policy.   To this objection it would be a sufficient answer that, as already held, the city in this matter is acting in its business, not its governmental, capacity, and the owner of business property, even though a municipal corporation, may in dealing with it make such terms as in its discretion it deems best for its interest.   When the owner of a business sells it with its good-will, etc., he may agree as part of the consideration to the purchaser, not to go into the same business again as a rival, within an agreed territory or for an agreed time.   The city of

Philadelphia selling its gas-making plant and good-will may do the same thing. But in the provision of the lease now under consideration the city does not assume to grant any franchise. It could not do so if it would. What the city does is to covenant that it will do no act in derogation of the right of the lessee under the grant to operate the gas works and supply the city and the citizens with light therefrom. The franchise of the lessee to furnish light is not derived from the city but from the legislature, and whether it is exclusive or not at present, or shall be exclusive or not in the future, does not and will not depend.on the city, but on the legislature. All that the city does is to agree that it will do no act itself whereby the privileges granted by it to the lessee, and intended to be exclusive so far as it is concerned, shall be limited or interfered with. This was clearly within its powers in dealing with its business property. Whether the legislature may hereafter impose upon the city a municipal duty in regard to lighting which may conflict with its present contract is a question we need not consider until the case shall arise with proper parties in interest to such a question.

It is further argued that the lease undertakes to bind the discretion of councils for a long term of years. This again comes back to the contention that lighting the city is a strictly municipal or governmental function, as to which councils cannot bind their successors. But as already held the city is acting in its business capacity only, and the contract binds it in that capacity. All contracts which contemplate things to be done after the immediate present must, to that extent, bind and limit the power of the contracting party. This principle has already been adjudicated in its application to the city of Philadelphia and the gas works in the cases of the Western Saving Fund Society v. Phila., 31 Pa. 175, Same v. Same, 31 Pa. 185, and Wheeler et al. v. Phila., 77 Pa. 338.

The last proposition of the appellants is that the ordinance impairs the obligation of the city's contract with certain holders of its bonds. This was the ground of decision in Western Saving Fund Society v. Phila., supra. But the cases are not at all alike in the facts. In Saving Fund Society v. Phila. the ordinance of 1841 distinctly pledged the revenues of the gas works to the creditors for security of payment of the bonds, and provided

for the management by trustees for that purpose. The ordinance of 1868, under which Mr. Campbell, one of the complainants, is a bondholder, has no such provision. The loan was made to the city, and upon the city's general credit, without any pledge of its revenues from the gas works or any other specified source. On the contrary the ordinance gave express notice in section 4, that the terms and provisions of the ordinance of 1841 should not apply in any way to this loan. Section 3 of the ordinance requires the retention by the trustees of the gas works of a certain per cent of the amount of the loan, annually, and its payment into the city treasury, whereupon the city undertakes to apply part of it to the payment of the interest on the loan and to pay the other part into the sinking fund. These provisions are not part of the contract between the city and the loan-holders, but are terms imposed by the city on the trustees of the gas works as conditions on which the city will raise the money for the latter's use. Without these terms the city would have had to meet the bonds at their maturity out of general taxation, and could not have looked for repayment from the revenues of the gas works unless at the option of the trustees. By these terms the city guarded itself from this risk, and secured repayment to itself from the revenues of the department for whose use it had borrowed the money. But the requirements of this section were for the protection of the city only and involved no pledge to the loanholders. They loaned on the general credit of the city, and perhaps also on the faith of the sinking fund pledged for the payment of this and other loans. But there is no averment that the sinking fund has not been kept up by appropriation from the city treasury from time to time as required by law. Without such averment and proof it does not appear that any obligation of the loanholder' contract has been impaired.

None of the grounds on which the court is asked to interfere can be sustained, and the injunction was rightly refused.

Decree affirmed at costs of appellants.