CURRY *v.* CITY OF HIGHLAND PARK.

1. MUNICIPAL CORPORATIONS—RIGHT OF CITY TO· SELL PROPERTY.
   Property owned by a city as a proprietor and not used or needed in the discharge of its governmental functions may, in the absence of restrictions in its charter, be sold by it, but property used by a city in the discharge of its governmental functions may not be sold by it in the absence of authority so to do in its charter.

2. SAME—LAND USED FOR DISPOSAL OF GARBAGE—GOVERNMENTAL FUNCTION.
   Since the collection and disposal of garbage is a matter ·of public health and within the police power of a city, land owned and used by it for the disposal of garbage and also as a dumping ground is used in the discharge of a governmental function.

[1]Municipal Corporations, 43 C. J. § 2098; 19 R. C. L. 773; 4 R. C. L. Supp. 1288; 6 R. C. L. Supp. 1137; 7 R. C. L. Supp. 644; [2]Id., 43 C. J. § 179; 19 R. C. L. 1128.

3. SAME—HIGHLAND PARK CHARTER—PRIVATE SALE OF LAND USED
   IN DISCHARGE OF GOVERNMENTAL FUNCTION NOT AUTHORIZED.

   In the absence of authority in its charter or elsewhere,
   the city of Highland Park has no authority to sell at
   private sale land owned and used by it in the discharge
   of a governmental function, *i. e.*, the disposal of garbage,
   and it is immaterial that said land is located without the
   boundaries of the city; it being by the Constitution (Art.
   8, § 22) authorized to own and use it.

Appeal from Oakland; Covert (Frank L.), J.    Submitted April 4, 1928.    (Docket No. 15.)    Decided June 4, 1928.

Bill by George E. Curry against the city of Highland Park and others for specific performance of a land contract.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*Butzel, Levin & Winston* (*A. J. Levine* and *I. Z. Acoff*, of counsel), for plaintiff.

*Claude H. Stevens*, for defendants.

FELLOWS, J.    Defendant city owned a piece of land in Oakland county consisting of a little over 21 acres upon which was maintained a piggery used to dispose of its garbage.    The land was also used by the city as a dumping ground.    During the absence of the mayor a resolution was adopted authorizing its sale to plaintiff for $16,000, less the usual commission which would amount to $800.    The following morning notice of a motion for reconsideration was filed by one of the commissioners.    Before the next meeting of the council the mayor returned and he and the commissioner who moved for reconsideration voted for the motion; the other three members declined to vote.    At this meeting one offer of $25,000 for the land was made, another of $1,000 an acre was made, and the

report of an appraisal by competent real estate men fixing its value at $30,000 was filed. At the next meeting the resolution to sell was rescinded, but it is admitted that under the rules this attempted action was ineffective. Plaintiff tendered compliance with the terms of the resolution, and, upon the refusal of the city to go on with the deal, filed this bill for specific performance. The following sections of the charter of the city enumerating its powers are deemed important in the consideration of the case:

"45. To purchase, appropriate and own such real estate as may be necessary for public grounds, parks, boulevards, markets, public buildings, public works, and other purposes necessary or convenient for the public good, and for the execution of the powers conferred in this charter or by the statutes of this State; and such buildings and grounds, or any part thereof, may be sold at public sale, or leased, as occasion may require; provided, however, no property of the value in excess of ten cents *per capita* according to the last preceding United States census, nor any park, nor any real estate used in carrying on a public utility, or any part thereof, shall be sold, unless such sale be first approved by three-fifths of the electors voting thereon at any general or special election.  *  *  *

"47. To acquire, own, erect, maintain, manage and control real estate, building, institutions and works without the corporate limits of the city, except where prohibited by this charter or the general laws of this State, and to enforce beyond the corporate limits of the city and over such lands, buildings, institutions and property all ordinances and police regulations as may be necessary for the care, protection, control and management thereof in the same manner and to the same extent as if they were located within the city."

Several defenses were interposed to plaintiff's bill, one of which, that under the charter the lands could only be sold at public sale, was the basis of the decree dismissing the bill.

To reverse this decree we must accept two contentions advanced by plaintiff's counsel: (1) That the

land in question was held by the city as a proprietor, and not in its governmental capacity; and (2) that the language of the charter, "may be sold at public sale," does not require a public sale of lands so held.   It is sometimes stated that, in the absence of restrictive provisions in its charter, a municipality has the right to sell property which it has the right to acquire.   This statement is, however, too broad.   Doubtless property owned by a city as a proprietor and not used or needed in the discharge of its governmental functions may, in the absence of restrictions in the charter, be sold by it, but property used by a city in the discharge of its governmental functions may not be sold by it in the absence of authority so to do in its charter; some States say it may be sold when it becomes inadequate or otherwise inappropriate for the public use.   The latest work on municipal corporations (3 McQuillin on Municipal Corporations [2d Ed.], p. 749), after considering the subject somewhat, says:

"These general expressions, however, are reducible to the proposition that all property of the municipal corporation of a private nature may be sold.   But the chief authority for this point of view is the public interest.   While it is a recognized rule of the common law that municipal corporations may, in so far as they possess private rights, dispose of their property without special authority from the State, this limitation exists:   That property possessed and used by municipal corporations as public agencies of the State for the purpose of governmental administration cannot be alienated by them without special authorization. All property held by the city in fee simple, without limitation or restriction as to its alienation, may be disposed of by the city at any time before it is dedicated to a public use.   In other words, the city has the right to sell or dispose of property, real or personal, to which it has the absolute title and which is not affected by a public trust, in substantially the same manner as an individual unless restrained by statute

or charter; and this power is an incidental power inherent in all corporations, public or private."

There is no express provision in the charter of defendant city, at least none has been called to our attention, authorizing the private sale of property needed by the city to discharge its governmental functions, or granting such authority by necessary implication. We should, therefore, proceed at once to the crucial question in the case of whether the property here involved was so used. The principal use to which the property here involved was devoted was the disposal of the garbage of the city, although it was also used in part as a dumping ground. The question of when a municipal corporation is discharging a governmental duty, a governmental function, has arisen most frequently in tort actions for negligence of city employees, and there is quite a wealth of decisions on the subject, a few of which will be considered in this opinion. Both counsel concede that the precise question here involved has not been settled by the former decisions of this court, but both contend that former decisions of this court are by analogy applicable. Before taking up our own decisions, we shall consider some of the decisions of other States, and first those urged upon us by plaintiff's counsel:

The New York cases (*Kings County Fire Ins. Co.* v. *Stevens,* 101 N. Y. 411 [5 N. E. 353]; *People, ex rel. Lehigh Valley R. Co.,* v. *State Tax Com'n,* 206 N. Y. App. Div. 549 [202 N. Y. Supp. 310]; *Missano* v. *New York,* 160 N. Y. 123 [54 N. E. 744]; *Quill* v. *New York,* 36 N. Y. App. Div. 476 [55 N. Y. Supp. 889]) sustain plaintiff's contention. Three of the cases involved streets and one the disposal of garbage and ashes. It will be noted that in the street cases it is held that the municipality was not in the discharge of a governmental function in the care of its streets, a holding we could not follow, as we have expressly

held to the contrary.    *Gunther* v. *Cheboygan County Road Com'rs,* 225 Mich. 619.

In *Atlas Life Ins. Co.* v. *Board of Education of City of Tulsa,* 83 Okla. 12 (200 Pac. 171), it was held that the board had the power to lease for 99 years real estate held by it.    But the site by reason of the development of the city had become unsuitable for school purposes.    The same court held in the later case of *City National Bank* v. *Town of Kiowa,* 104 Okla. 161 (230 Pac. 894, 39 A. L. R. 206), that a city could not sell its waterworks and electric light plant, at least without the property being burdened with the duty of continual service.    The constitution of Oklahoma, however, permits municipalities to engage in any business and it doubtless is not necessary to observe carefully the distinction between private and governmental rights and ownership under such a constitutional provision.

*Ostrom* v. *City of San Antonio,* 94 Tex. 523 (62 S. W. 909); *Pass Christian* v. *Fernandez,* 100 Miss. 76 (56 South. 329, 39 L. R. A. [N. S.] 649); and *Flannigan* v. *Bloomington,* 156 Ill. App. 162, sustain plaintiff's contention that in disposing of its garbage a city does not discharge a governmental function. *Baily* v. *Philadelphia,* 184 Pa. 594 (39 Atl. 494, 39 L. R. A. 837, 63 Am. St. Rep. 812), involved the lease of a gas plant, and *Carlisle Gas & Water Co.* v. *Carlisle Borough,* 218 Pa. 554 (67 Atl. 844), the sale of waterworks.    This court in common with nearly every court in the Union is in accord with the Pennsylvania court in holding that the municipality holds its lighting plant and waterworks as a proprietor and not as a governmental agency.    Later the Pennsylvania court had before it in *Scibilia* v. *Philadelphia,* 279 Pa. 549 (124 Atl. 273, 32 A. L. R. 981), the question of whether, in the disposal of its garbage, the municipality was acting as a governmental agency and, in an exhaustive

and able opinion by its Chief Justice, held that it was. It was said:

"The care of public health is undoubtedly a subject-matter of general concern, and how it shall be accomplished is a public question. When the legislature leaves its accomplishment to any degree in the hands of the several municipalities, they act as government agencies, and not as business corporations, in the performance of the power placed at their disposal, or of the duty thus put on them, whichever it may be. That cleanliness makes for health must be accepted as a truism, and that the regular, systematic gathering by municipalities of refuse, including ashes, and the proper, orderly, and efficient disposal thereof, promote cleanliness, is apparent. Such gathering and disposal of refuse is primarily a health measure, the duty to perform which might have been placed on the health department; the fact that it was put elsewhere makes it none the less a health measure, and hence, a public or governmental function within the police power."

We now turn to some of the other cases: In *City of Louisville* v. *Hehemann*, 161 Ky. 523 (171 S. W. 165, L. R. A. 1915C, 747), the court held the municipality liable for damages to adjacent property and the occupants thereof by reason of using the street as a dumping ground for garbage, but held that it was in the discharge of a governmental function, the court saying:

"In the collection and disposition of garbage, undoubtedly the city acts for the public health, and discharges a governmental function. In this regard it is an agent or arm of the Commonwealth, and, for that reason, is absolved from liability for the negligence of its employees. But there is an element of wrong complained of in this case which goes beyond that. Conceding that a city dump is necessary for the public good, and that Cabel street was the proper place for it, still the city had no right to take or injure adjacent private property, or the occupants in the use thereof without making compensation."

That a city is in the discharge of a governmental

function in the collection and disposal of its garbage
is held in the following cases:   *City of Tuscaloosa*
v. *Fitts,* 209 Ala. 635 (96 South. 771) ; *Manning* v. *City
of Pasadena,* 58 Cal. App. 666 (209 Pac. 253) ; *James*
v. *City of Charlotte,* 183 N. C. 630 (112 S. E. 423) ;
*Love* v. *City of Atlanta,* 95 Ga. 129 (22 S. E. 29, 51
Am. St. Rep. 64) ; *Kuehn* v. *City of Milwaukee,* 92
Wis. 263 (65 N. W. 1030) ; *Haley* v. *City of Boston,*
191 Mass. 291 (77 N. E. 888, 5 L. R. A. [N. S.] 1005) ;
*Behrmann* v. *City of St. Louis,* 273 Mo. 578 (201 S. W.
547).   That a municipality is so acting in the collection
of ashes, refuse, and street sweepings is held in the
following cases.   *Condict* v. *Jersey City,* 46 N. J. Law,
157; *Bruhnke* v. *City of Lacrosse,* 155 Wis. 485 (144 N.
W. 1100, 50 L. R. A. [N. S.] 1147).   Likewise in
sprinkling streets.   *Harris* v. *District of Columbia,*
256 U. S. 650 (41 Sup. Ct. 610, 14 A. L. R. 1471) ;
*Conelly* v. *City of Nashville,* 100 Tenn. 262 (46 S. W.
565) ; *Kippes* v. *City of Louisville,* 140 Ky. 423 (131
S. W. 184, 30 L. R. A. [N. S.] 1161).   In each in-
stance the act of the municipality is in the interest of
the public health and the municipality acts as the arm
of the State.   Its property devoted to such service
is devoted to the performance of a governmental func-
tion.   This, we think, is in accordance with the great
weight of the authorities.   The following cases will
prove of interest:   *City of Asheville* v. *Herbert,* 190
N. C. 732 (130 S. E. 861) ; *Driscoll* v. *City of New
Haven,* 75 Conn. 92 (52 Atl. 618) ; *Meldrum* v. *District
of South Vancouver,* 22 B. C. 574; *Herald* v. *Board
of Education,* 65 W. Va. 765 (65 S. E. 102, 31 L. R.
A. [N. S.] 588).

Turning now to our own cases, it should be first
noted that in *People* v. *Gardner,* 136 Mich. 693, and
*Pantlind* v. *City of Grand Rapids,* 210 Mich. 18 (15
A. L. R. 280), this court sustained ordinances regulat-
ing the collection and disposal of garbage upon the
ground that they were a valid exercise of the police

power.    See, also, *People* v. *Gordon*, 81 Mich. 306 (21 Am. St. Rep. 524); *City of Grand Rapids* v. *DeVries*, 123 Mich. 570.    In *Attorney General* v. *City of Detroit*, 225 Mich. 631, it was held (quoting from the syllabus):

"In matters of public health, of police, and such activities, municipalities act as agents of the State, but in the management of water works, electric light plants, etc., of which they are proprietors, they act in matters of purely local concern as also in numerous other activities pertaining to the locality as distinguished from the State at large."

See, also, *Gunther* v. *Cheboygan County Road Com'rs*, *supra*.    The recent case of *Foss* v. *City of Lansing*, 237 Mich. 633, was an action brought to recover damages occasioned by the negligence of the driver of a truck used by the city in hauling its garbage. The record disclosed that the city received an incidental profit in its garbage disposal.    The court held, following earlier cases, that, where the municipality received such profit, it was liable for the negligence, although it was in the discharge of a governmental function, the holding being (we quote the syllabus):

"Where there is an incidental profit to a municipality in collecting and disposing of garbage, by feeding it to hogs, it is liable for the negligence of its employee in operating a truck while engaged in collecting such garbage, although in so doing the municipality is performing a governmental function."

Other courts have held that effect should be given the matter of revenue in cases involving negligence. In considering such question, it was said in *Scibilia* v. *Philadelphia*, *supra:*

"Where the authority exercised or thing done is on the border line between the private and the governmental capacities in which municipalities may act, and has features suggestive of both, charges made for, and commercial income derived from, the rendition of the services involved, have been given decisive influence

as elements which determine the case to be of a kind where damages for injuries may be recovered, and the absence of these elements has been allowed force the other way.    Here, however, no evidence of income received from the activity under consideration appears, and even though it be considered, for the purpose of deciding the present appeal, that some small incidental revenue may be derived through the disposal of refuse gathered by the municipality, this would not have the effect of changing the duty of collecting and disposing of such refuse from a purely public to a corporate, or business, function."

In the instant case, however, it does not appear that the defendant city received any revenue from its garbage disposal.

So far as our cases have gone, we think they are in line with the weight of authority and sustain defendants' contention.    The matter of public health is not local, it concerns the State.    In matters relating to public health, the city acts as an arm of the State and the property whose use is devoted to the public health is used in the discharge of a governmental function.    There is no special authority in the charter of the city or elsewhere, so far as called to our attention, which authorizes the city to sell at private sale property which is devoted to the discharge of those duties which devolve upon it as an arm of the State.

We attach no significance to the fact that the property is without the boundaries of the city.    The Constitution authorizes the city to own and use it (art. 8, § 22).    It may not exercise the power of eminent domain to acquire it.    (*City of Detroit* v. *Oakland Circuit Judge,* 237 Mich. 446), but having lawfully acquired it and having devoted it to a State use, it is beyond the manipulations here undertaken for the benefit of private speculators.

The decree will be affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.