## ATLAS LIFE INS. CO. v. BOARD OF EDUCATION OF CITY OF TULSA.

No. 12481—Opinion Filed Aug. 2, 1921.

(Syllabus.)

1. **Municipal Corporations—Implied Powers—Sale of Municipal Property.**

Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation of a private nature, unless restrained by charter or statute.

2. **Schools and School Districts—Powers of Board of Education—Lease of Real Estate.**

Under the statutes and constitutional provisions set out in the opinion, a board of education of an independent school district of a city of the first class possesses the power to lease for 99 years to a private corporation for private purposes, any real estate held by it which has become unsuitable or is not needed for school purposes.

3. **Municipal Corporations—Ultra Vires—Implied Powers.**

The rule of ultra vires ought to be reasonably and not unreasonably understood and applied, and whatever may fairly be regarded as incidental to and consequential upon those things which the Legislature has authorized municipal corporations to do ought not, unless expressly prohibited, be held by judicial construction to be ultra vires.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action for specific performance, upon agreed statement, by the Board of Education of the City of Tulsa against the Atlas Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William F. Tucker, Hulette F. Aby, and Frank Settle, for plaintiff in error.

Bell & Fellows and Rice & Lyons, for defendant in error.

KANE, J. This was an action for specific performance, commenced in the district

court of Tulsa county pursuant to section 5303, Rev. Laws 1910, providing for the submission of a controversy touching a question which might be the subject of a civil action upon an agreed statement setting out the facts upon which the controversy depends, where it appears, that the controversy is real and the proceedings are in good faith to determine the rights of the parties.

The legal question involved is whether or not a certain lease for 99 years executed by the board of education of the city of Tulsa to one Earl W. Sinclair and thereafter duly and regularly assigned to the Atlas Life Insurance Company, the plaintiff in error herein, invested the latter company with a leasehold estate in the premises described therein. The agreed statement of facts shows that the leased premises consisted of two lots in what is known as the high school block, situated in the city of Tulsa, the fee simple title thereto being in the board of education; that originally the high school was located on this block; that subsequently, on account of the growth of the city of Tulsa, many large business structures were erected adjacent to this block, rendering it of great value but unsuitable for school purposes; that in view of this the block was duly abandoned by the board for school purposes, and subsequently several of the lots were sold, the fifteen-story Cosden office building and the city hall of the city of Tulsa being constructed thereon by the purchasers; that after the abandonment of the block for school purposes the old high school building was demolished, and since that time no portion of said block has been used in any manner for school purposes, nor is it suitable for such use.

The sale of the lots upon which the buildings hereinbefore mentioned were constructed was held to be valid in Cosden v. Board of Education of City of Tulsa, 60 Okla. 214, 159 Pac. 1108, the court holding:

"By virtue of section 3, art. 6, of chapter 219 of the Session Laws of 1913, the board of education of cities of the first class in this state possess the power and authority to sell and convey real estate, and said board may exercise this power without the necessity of making any finding of the reason or necessity which induces the exercise of its discretion."

As the validity of the lease executed in this proceeding turns upon the construction to be placed on section 3, supra, and the other sections of the statute referred to in the Cosden Case, we will set them out at this point. They are as follows:

"1. Each city of the first class shall * * * constitute an independent district and be governed by the provisions of this article. * * *

"3. The public schools of each city or town organized in pursuance of this article shall be a body corporate, and shall possess the usual power of corporations for public purposes, by the name and style of the board of education of the city or town of ——————, of the state of Oklahoma, and in that name may sue or be sued, and be capable of contracting or being contracted with, of holding and conveying such personal and real estate as it may come into possession of, by will or otherwise, or as is authorized to be purchased by the provisions of this article.

"4. Any city of the first class or town is hereby authorized and required, upon the request of the board of education of such city or town to convey to such board of education all property within the limits of any such city heretofore purchased by any such city for school purposes and now held and used for such purposes, the title to which is vested in any such city or town."

The single question presented for decision in the case at bar is, Do the foregoing sections of the statute and the provisions of the Constitution hereinafter cited, either directly or by fair implication, confer power upon the board of education of the city of Tulsa, a municipal corporation and an independent school district, to convey by a written lease and give merchantable title to the property described in the agreed case? That is, has the board of education authority to make, execute, and deliver a lease for 99 years covering said property, the same being held by the board of education in its proprietary character and the same being no longer suitable or needed for school purposes?

The trial court answered this question in the affirmative, and decreed specific performance against the plaintiff in error, and it is to reverse this ruling that this proceeding was commenced.

Upon examination of the agreed statement of facts and careful consideration of the able briefs filed by counsel for the respective parties, we are convinced that the judgment of the trial court was correct and should be affirmed.

At the outset it is conceded that municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corpora-

tion of a private nature, unless restrained by charter or statute. Owen v. City of Tulsa, 27 Okla. 264, 111 Pac. 320.

On principle we are unable to perceive any good reason why, when this block became unsuitable and was no longer needed for public purposes, the board of education could not make a valid contract to use it in some private service. This principle was applied in the case of the City of St. Louis v. The Maggie P., 25 Fed. 203. In that case the city of St. Louis, through its harbor master, contracted to raise a sunken vessel. This contract was made with the owner of the vessel. The city filed a libel for these services, and the question was raised whether the making of such a contract was not outside the scope of municipal powers. The court, through Mr. Justice Brewer, sustained the libel after careful consideration, saying:

"When it (the city) has in its possession instrumentalities and hires employes for the purpose of discharging some public duty, I see no reason why, when the exigencies of public duties do not require the use of those instrumentalities and employes, it may not make a valid contract to use them in some private service."

The same principle was also applied in the case of Gottlieb-Knabe & Company v. Charles F. Macklin et al. (Md.) 31 L. R. A. (N. S.) 580, where the right to hire a school building for a single evening or a number of evenings was involved. It was held:

"Statutory authority to a municipality to rent the unused property for fixed and limited terms includes the power to let or hire the use of it for a single evening, or a number of evenings, whether consecutive or not."

In Davidson v. Baltimore, 96 Md. 309, 53 Atl. 1121, under an ordinance by the mayor and city council of Baltimore a lot was acquired and building erected thereon for the use of English-German School No. 1, and it was so used for a number of years, when the board of school commissioners of the city determined to use it for a colored high school, which change of use certain taxpayers of the city sought to restrain by injunction. In refusing the injunction, on appeal the court, referring to section 1 of the city charter, supra, said:

"By the 1st and 2nd sections of that instrument, all the property of the city is vested in them, with full power of disposition of it in the manner and terms therein provided. Under the lease the mayor and city council became the owner of the premises, and by reason thereof had full power to designate, from time to time, the uses to which it could be put. * * * The terms of the charter and the acts of assembly, if there were any, determine what should be the measure of their power and duty. * * * It could not have been intended that for all time the premises could be used only for the uses o f that school. * * * If it could be made available for no other use than those specifically mentioned, it could well happen that after the location had ceased to be available for the specific use, and there was no power in the corporation to designate any other employment of the premises, the property would remain idle and utterly worthless, and become a mere incumbrance on the city."

While this case did not involve the precise question here presented of property no longer suitable or needed for public purposes, it is useful as showing the broad and emphatic language used in considering the power of the school board in determining the use to which property of that description can be put.

In French v. Quincy, 3 Allen (Mass.) 9, the town erected a town hall on a lot held under a deed conveying the title for that specific use, with condition for reverter to the grantor or his heirs on breach of condition as to use. The building was so constructed as to contain in the first story a bank, a clothing store, and a lockup, and in the second story a hall for town meetings, also used as a theater and for entertainments and dances. Upon a writ of re-entry it was held that the town, having authority to construct the building, and not having occasion to use parts of it for the time being, was not obliged to keep them unoccupied, but might derive a revenue from them by renting them, notwithstanding this interfered with the business of the plaintiff's tavern.

In Bates v. Bassett, 60 Vt. 531, 15 Atl. 200, the town owned an old hall not used or needed for town purposes. Being dilapidated, it was repaired at a cost of $2,500, and the apartments rented for various purposes. The court said:

"The town has no right as a primary purpose to erect buildings to rent, but if, in the erection of its hall for its proper municipal uses, it conceives that it will lighten its burdens to rent part of its building, whereby an income is gained, no sound reason is suggested why it may not do so."

It may be conceded that if the land involved in the case at bar was being held by the board for certain prescribed public purposes, it could not be applied to purposes

other than those indicated by the act fixing the limitation. But if, under the statutes involved in this case, real estate no longer needed for public purposes held by a school board can be made available in no other manner except by absolute sale, it could well happen that this very valuable property would remain idle and utterly worthless and become a mere incumbrance on the board of education. We are unable to agree with this illiberal construction of the law. By section 3, supra, the school board is authorized to acquire and hold real estate not suitable or needed for school purposes. In these circumstances it becomes the owner in fee simple of the land, and we are unable to find in the statute any limitation upon the power of alienation incident to ownership —the jus desponendi. Generally, as we have seen, municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation of a private nature, unless restrained by charter or statute. Owen v. City of Tulsa, supra.

Moreover, the power to convey granted by the statute, when the word convey is liberally construed, as it often has been by this and other courts, includes the power to lease for a fixed term. Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259; Waskey v. Chambers, 224 U. S. 564, 56 L. Ed. 885. In the latter case the learned Justice who prepared the opinion for the court says:

"Blackstone defines a lease as a conveyance, 2 Com. 317, and in Sheppard's Touchstone, 267, leases are ranked under the head of grants—'as in other grants.' The point does not need authority except to exclude the notion that the statute uses the word in a narrower sense."

It is quite true that the rule stated in the foregoing authorities in regard to private use of municipal property has generally not been applied to the same extent to the use of school buildings when in charge of school districts, and several courts have refused the use of the school building except for strictly school purposes. This refusal to permit such private use of school property may possibly to some extent be accounted for by the limited authority generally granted school districts, although there is nothing in most of the cases tending to show that they would have held otherwise had the property been in control of city authorities We do not consider cases, based upon this reasoning, to be in point in this jurisdiction in cases involving the powers of the boards of education of the independent school districts, of cities of the first class, organized under the foregoing statutes.

In the first place, section 5, art. 19, Williams' Constitution, provides that:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm or corporation by virtue of a franchise from said corporation."

Again, by act of the Legislature, school districts are divided into three general classes: (1) Public school districts comprising territory lying outside of incorporated towns; (2) consolidated school districts, formed by the consolidation of common school districts; (3) independent school districts, comprising cities and outlying territory. The board of education of the city of Tulsa represents an independent district.

Counsel representing the prevailing party in the Cosden Case, supra, and who also represents the board of education in the case at bar, called the court's attention to certain differences in legal standing between the common school districts and consolidated school districts on the one hand and boards of education representing independent school districts on the other. The court recognized the distinction pointed out, saying:

"The length of term for which the members of the board of education hold office and the general powers conferred upon them by the act aforesaid, indicate that the Legislature deemed that the public welfare could be better subserved and the interest of the public schools of the state more efficiently advanced by granting to boards of education of cities of the first class powers and rights which were denied the governing bodies of other school districts referred to in the act."

Referring again to the act conferring power upon boards of education, it will be seen that it provides that such bodies shall be bodies corporate and shall possess the usual powers of corporations organized for public purposes, with power to sue or to be sued and of contracting or being contracted with.

In these circumstances, the grant of power being as broad in the case of a board of education as any other corporation organized for public purposes, we see no room for making invidious distinctions between the standing as a corporation of a board of education and any other corporation organized for public purposes. For this reason we are of the

opinion that the cases hereinbefore cited involving the power of cities over property not needed for municipal purposes are strongly in point.

• We have examined the case of Herald v. Board of Education, 65 W. Va. 765, 63 S. E. 102, and do not find it to be in point. In the first place the court in that case lays great stress on the circumstance that under the laws of West Virginia school districts and bodies of that sort rank low down in the scale or grade of corporate existence, and gives this as a reason for strictly construing the statute under consideration.

In the second place there was a limitation upon the power of alienation contained in the deed of grant itself, and in the third place the property involved was suitable, needed, and actually being used for school purposes. Finally, we are strongly of the opinion that the rule of ultra vires ought to be reasonably and not unreasonably understood and applied, and that whatever may fairly be regarded as incidental to and consequential upon those things which the Legislature has authorized municipal corporations to do, ought not, unless expressly prohibited, be held by judicial construction to be ultra vires.

For the reasons stated, we think the judgment of the court below is correct and should be affirmed. It is so ordered.

PITCHFORD, V. C. J., and JOHNSON, MILLER, ELTING, and KENNAMER, JJ., concur.