## MOOMAW et al. v. SIONS.

No. 13957—Opinion Filed July 10, 1923.

Rehearing Denied Dec. 11, 1923.

Leave to File Second Rehearing Denied Dec. 18, 1823.

(Syllabus.)

**1. Municipal Corporations—Status of Municipality Operating Light Plant.**

A municipal corporation engaged in the operation of a system of electric lights exercises business and administrative functions rather than those strictly governmental, and is governed largely by the same rules applicable to individuals or private corporations engaged in the same business.

**2. Same—Power of Town to Abandon Part of Property Without Election.**

A portion of the property bought with the proceeds of a bond issue for the construction of electric light works for an incorporated town may be abandoned by the board of trustees of such town when it has become unsuitable or unprofitable to use it for the purpose for which it was originally intended and it is not necessary to have an election for that purpose.

**3. Same—Contract to Purchase Electricity —Validity.**

A contract entered into by the board of trustees of an incorporated town for the purchase of electric current to supply its electric light system, which results in the practical abandonment of the plant which had theretofore been operated for generating electricity, and which plant had been purchased with the proceeds of a bond issue, is not invalid because the execution of the contract and the abandonment of the light plant was not submitted to a vote of the people.

**4. Same.**

Evidence examined and held to support the finding of the trial court that the action of the trustees in making the contract was not entered into through caprice, fraud, or oppression.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Harry Sions, for himself and others, against Paul W. Moomaw and others, Trustees of the Town of Okemah and another, for injunction. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

Cottingham, Hayes, Green & McInnis, Patterson & Dooley, Logan Stephenson, and Belfort & Hyatt, for plaintiffs in error.

Phillips, Douglass & Duling and White & Nichols, for defendant in error.

COCHRAN, J. This action was commenced on August 7, 1922, by the defendant in error against the trustees of the town of Okemah and Oklahoma Power Company, plaintiffs in error, to enjoin the plaintiffs in error from carrying out the provisions of a contract made by the town of Okemah for the purchase of electric current from the Oklahoma Power Company. The parties will hereinafter be referred to as plaintiffs and defendants, as they appeared in the trial court. From the judgment in favor of the plaintiffs, the defendants have appealed.

In 1909, the citizens of Okemah, by an election held therefor, authorized the issuance of bonds in the sum of $5,500 for the construction of electric light works in said town. From the proceeds of the sale of the bonds so authorized, an electric light system was constructed, and has since that time been maintained under the provisions of the Constitution and statutes. Section 4765, Comp. Stat. 1921, provides:

"The board of trustees shall have the power to establish and maintain a system of electric lights for the town, and said board shall have the power to provide for a tax for the purpose of establishing and maintaining such system of electric lights."

Section 6, art. 18, Williams' Constitution of Oklahoma, provides:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

On July 24, 1922, the board of trustees of the town of Okemah in regular session entered into a written contract with the Oklahoma Power Company for the furnishing of electric current to the town of Okemah for distribution by it to its citizens. An ordinance was adopted authorizing the execution of the aforesaid contract. Under the terms of this contract, the city retained all of the property which had been sued by it for generating electric current, but the plant was not to be used for generating electricity except under certain circumstances. The trial court found that this contract was an abandonment by the town of the operation of the light plant; that the light plant having been acquired by said town from the proceeds of a bond issue authorized by an election duly held therefor, the town was without legal power or authority to enter into a contract with the Oklahoma Power Company without authority from the tax paying voters of the town by an election called for that purpose. No election having been had, the court held the contract was void. The defendant the Oklahoma Power Company contends that the facts in this case do not show an abandonment of

the light plant; but it is unnecessary for us to enter into a discussion of that question, and we may assume that the finding of the trial court was correct as to that question. There was no abandonment of the system of electric lights for the town, but, according to the finding of the court, an abandonment of the small plant which generated the electricity used in its system, for furnishing lights to its inhabitants.

The first question for determination is, can a board of trustees of an incorporated town, without authority from the people expressed at an election held for that purpose, enter into a contract for electric current to supply its electric system if the effect of such contract will be the abandonment of a portion of the equipment purchased with the proceeds of a bond issue, and theretofore used in the manufacture of electric current? It is insisted by plaintiffs that this case is controlled by the decision of this court in Perry Public Library Ass'n v. Lobsitz, 35 Okla. 576, 130 Pac. 919, in which it was held that where a public library was furnished and donation made upon the condition that the city council bind the city to furnish a site for the library building and maintain a free library, and the donation was accepted on such condition and the building constructed in accordance therewith, the title to the building was not established in the city, the city's title to the same was that of a trustee and the city could not divert the building or any portion thereof to other uses. It is insisted by the plaintiffs that the city of Okemah holds the property purchased from the proceeds of the bond issue in trust in the same manner, and such property cannot be diverted from the trust purpose. The language of that opinion shows the distinction to be made in the classes of property with which we are dealing in this case and trust property as in that case. In the opinion the court states as follows:

"But we do not regard that either of these cases, or cases of similar character are in point, for the reason that they turn upon statutes vesting the municipal authorities with power to control buildings constructed by the municipal corporations out of funds derived from the public revenue, the title to which and the control thereof is absolute in the municipal corporations, subject, of course, to such limitations as the statutes may impose. In the case at bar the title of the municipal corporation to the library is not absolute. In accepting the gift from the donor, the city took it with the obligations and limitations imposed by the donor, which were that the same would be a free library, and that the city should furnish annually not less than $1,000 for the support

and maintenance thereof."

We have been unable to find any authority to support the contention that property purchased by the city with the proceeds of a bond issue authorized for that specific purpose has any different character from property purchased with other revenue of the municipality. It is true that the fund derived in that manner can be used only for the purpose authorized, but the same is true under our statute of general funds authorized to be expended for a particular purpose. After the property has been acquired there is no difference in the nature of the property acquired from the proceeds of a bond issue and the property purchased with other revenue of the municipality. Under the Constitution and statutes of the state, the municipality is authorized to engage in the business of furnishing a system of electric lights, and as stated in the syllabus in the case of Fretz v. Edmond, 66 Okla. 262, 168 Pac. 800:

"Municipal corporations in operating a water plant exercise business and administrative functions, rather than those strictly governmental in their nature, and in the exercise of such functions are governed largely by the same rules applicable to individuals or private corporations engaged in the same business"

—and citing with approval Illinois Trust & Savings Bank v City of Arkansas City, 22 C. C. A. 171, 34 L. R. A. 518, in which the court said:

"A city has two classes of powers; the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class, it is governed by the rule here invoked. In their exercise, it is ruling its people and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class, it is controlled by no such rule, because it is acting and contracting for the private benefit of itself| and its inhabitants and it may exercise the business powers conferred upon it in the same way and in their exercise it is to be governed by the same rules that govern a private individual or corporation."

In the City of Henderson v. Young, 119 Ky. 224, 83 S. W. 583, it is said:

"A statute conferring sovereign and governmental powers upon a city must be strictly construed, but powers given for the private advantage of it and its inhabitants are to be construed in accordance with the general rules that apply to private indi-

viduals or corporations.

"In the management and operation of an electric (light) plant a city is not exercising governmental or legislative powers, but mere business powers, and it may conduct such plant in the manner which, in the judgment of the city council, promises the greatest benefit to the city and its inhabitants, and courts will not interfere with the reasonable discretion of the council in such matters."

In Atlas Life Ins. Co. v. Board of Education of City of Tulsa, 83 Okla. 12, 200 Pac. 171, the court said:

"On principle we are unable to perceive any good reason why, when this block became unsuitable and was no longer needed for public purposes, the board of education could not make a valid contract to use it in some private service."

And in the syllabus the following language is used:

"Under the statutes and constitutional provisions set out in the opinion a board of education of an independent school district of a city of the first class possesses the power to lease for 99 years to a private corporation for private purposes any real estate held by it which has become unsuitable or is not needed for school purposes."

It does not appear in the case last cited whether the property of the school district upon which the lease was executed was purchased with the proceeds of a bond issue; but, as we have heretofore stated, the character of the property would be the same whether purchased with the proceeds of a bond issue or out of other funds, and the authority of the municipality relative thereto would be the same. The only trust which could possibly exist would be that existing by reason of its use for a particular public purpose. If the municipality had authority to abandon this valuable property for school purposes when it had become unsuitable for that purpose and to execute a lease contract thereon to be used for other purposes, it certainly cannot be contended that property purchased by the municipality to be used in its quasi private capacity in connection with its electric light system cannot be abandoned when it has become unsuitable or unprofitable to use it for the purpose for which it was originally intended. The authority given the municipality to undertake the operation of a business enterprise necessarily carries with it the authority to deal with the same in the same manner that a private corporation would deal with its property, subject only to constitutional and legislative restrictions. In the instant case, it is not necessary to pass upon the question of the right of the

city to entirely abandon the operation of its light system or to make a sale thereof, as the contract in this case attempts to do neither. The particular effect of the contract under consideration is to provide for the purchase of electric current to be used by the city in maintaining its electric light system instead of generating electricity at its own plant. This was a question for the board of trustees to determine in the exercise of the best business judgment of the members of such board in the operation of the quasi private enterprise, and the contract executed for that purpose was valid unless entered into through caprice, fraud, or oppression.

Defendant in error contends that, although the trial court found that the contract was not entered into through caprice, fraud, or oppression, this finding is clearly against the weight of the evidence, and the contract should be held invalid for that reason. From an examination of the record, we are unable to say that the finding is clearly against the weight of the evidence, and the contract will therefore not be held invalid for that reason.

The judgment of the trial court is reversed, and cause remanded, with directions to enter judgment for the defendants.

JOHNSON, C. J., and KANE, NICHOLSON, HARRISON, and MASON, JJ., concur.

KENNAMER and BRANSON, JJ., dissenting.