## CITY NAT. BANK OF FORT SMITH, ARK., v. INCORPORATED TOWN OF KIOWA et al.

No. 13329—Opinion Filed Oct. 14, 1924.

Refiled and Rehearing Denied Nov. 25, 1924.

**1. Municipal Corporations — Authority of Officers—Limit of Powers.**

In this state the officers of municipal corporations have only such powers and can exercise such authority only as are expressly granted by law, or necessarily to be inferred as incidental to the exercise of those expressly granted.

**2. Same—Municipal Powers—Constitutional Provision.**

Section 6, article 18 of the Constitution is a grant of power to municipal corporations in furtherance of the public policy of the state, and is not intended as an extension of the powers of municipal officers in the discharge of their official duties.

**3. Same—Municipal Property—Kind and Character—Conveyances—Statute.**

Property owned and controlled by municipal corporations is of two kinds and characters, viz.: (a) That which is owned by and devoted to the use of the municipality as a corporate entity; (b) that which is owned by the municipality but dedicated to the use, service, and benefit of its inhabitants. Property of the first class, by the second subdivision of section 4762, Comp. Stat. 1921, may be sold and conveyed by municipal authorities. Property of the second class, acquired by virtue of sec. 27, art. 10, Const., may not be so conveyed free from the public use for which it was acquired and to which it has been actually dedicated, so long as it is suitable or adequate for that purpose and its use has not been abandoned.

**4. Same—Franchise — Referendum — Contract—Extent of Authority.**

Where the voters of a municipality are asked to give their assent to the conveyance of a municipally owned water and light plant, and to grant a franchise to the purchaser, under the referendum provisions of sections 5 (a) and 5 (b), art. 18, Const., the extent of the authority thus granted to the municipal officers is limited by the terms of the proposal and of the franchise ordinance so submitted at the election held for that purpose.

**5. Same.**

In such case the proposal, the franchise ordinance, and the conveyances thereafter made pursuant to the authority so granted constitute one entire contract and must be considered and construed together in determining the extent of the authority granted to the municipal officers by the people under such referendum.

**6. Same—Terms of Ordinance—Written Acceptance—Notice to Purchasers.**

Where by the terms of such ordinance the franchise holder is expressly limited to one method of thereafter conveying such property, viz., with the burden of its public use, and such ordinance is accepted in writing, the record of all these matters being shown and referred to in the instruments of conveyance, the limitation on the power to con-

vey is binding on the franchise holder and constitutes notice to all persons claiming under it adversely to the reserved rights in the public use of the property.

### 7. Same—Public Utilities—Public Policy—Constitutional Provisions.

The public policy of this state forbids that public utilities shall be willfully destroyed, or that public funds shall be diverted from the purposes for which they are voted, and where a waterworks and electric light system have been constructed from the proceeds of a bond issue authorized by section 27 art. 10 Const., public policy likewise forbids that private rights shall be acquired therein the enforcement of which would have that result.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by City National Bank of Fort Smith, Ark., against Incorporated Town of Kiowa, its board of trustees, clerk, and treasurer, and against Kiowa Ice, Light & Water Company, and E. G. Burnley, to recover on certain promissory notes and to foreclose certain mortgages. Judgment for plaintiff on the notes, but denying foreclosure and sale of the property, and plaintiff brings error. Modified and affirmed.

The facts of this case, substantially as stated in plaintiff's brief, are these: Prior to March 15, 1918, the Incorporated Town of Kiowa, in Pittsburg county, owned a plant for the furnishing of electric and water service to the inhabitants thereof. February 23, 1918, the board of trustees of the town passed an ordinance, known as "Ordinance No. 103", granting to Kiowa Water Works, Light & Power Company, and to its successors and assigns, a franchise to operate light, power, and waterworks systems in the town. The proposal leading to the enactment of this ordinance was made by Milo T. Crane and E. G. Burnley with the understanding that they should incorporate a company to receive the franchise. Prior to the adoption of this ordinance, and on December 3, 1917, the proposal of Crane and Burnley had been submitted to the voters of the town by referendum, and the voters had authorized the board of trustees to sell the rights, titles, interests, and equities of the town "in the operation and use of the plants * * * so far as it could be legally done," and to grant a franchise to the purchasers. March 11, 1918, "Ordinance No. 103" was submitted to the voters of the town under sections 5 (a) and 5 (b), art. 18, Const., and was by them ratified and adopted. Kiowa Water Works,

Light & Power Company filed its acceptance of the ordinance with the town clerk in writing as required by the terms of the ordinance. Pursuant to the authority granted by the voters the president of the board of trustees and the town clerk, on March 15, 1918, executed a deed and a bill of sale covering all of the physical properties of the light and water system to Kiowa Water Works, Light & Power Company, and these instruments were placed of record. Crane and Burnley paid for the property $2,500 in cash and $2,500 in light and water service. The property was valued by them at $48,000, and they divided this amount of stock of the Kiowa Water Works, Light & Power Company between the two. No other payment on the stock was ever made by either April 30, 1919, Kiowa Water Works, Light & Power Company executed its note to E. G. Burnley for $6,500, due one year after date, and secured by mortgages on all the physical properties of the Kiowa light and water system. May 6, 1919, Burnley pledged these evidences of indebtedness to the plaintiff bank as collateral security for a personal loan. April 6, 1920, Burnley took another note from the light and power company for $8,633.91, due one year after date and secured by mortgages on the physical properties of the light and water system. The first of these notes was made payable at Fort Smith, Ark., and the last at McAlester. This second note was likewise pledged to plaintiff bank to secure a personal loan to Burnley. About the time of the execution of these notes the Kiowa Water Works, Light & Power Company ceased to operate said plant and system as a public utility, and Burnley defaulted in payment of his indebtedness to plaintiff bank. The boilers, engines, dynamo, copper lead wire, and other movable parts of the plant to the value of about $10,000 have been sold.

Plaintiff's petition was in the usual form of actions on promissory notes, and asked for foreclosure of the mortgages, and an order to sell the property.

There was no appearance by either Burnley or the light and water company. The town answered by general denial; alleged affirmatively that at the time of the execution of the notes and mortgages by the company to Burnley he was indebted to the company more than $12,000 for unpaid stock, and that the notes were without consideration; denied the power and authority of the company to mortgage or otherwise convey the property free from the public use, and pleaded all proceedings and public records connected with the transfer of the property by the town and the granting of the fran-

chise; alleged the binding force of the acceptance of ordinance No. 103 by the company; alleged the dedication of the property to public use, and denied the authority of the town's officers to convey the same free of such public use. There were numerous other allegations in the answer not deemed material to a consideration and disposition of the case.

Reply was filed, in effect denying notice of the matters alleged in the answer.

Trial was had January 9, 1922, resulting in a judgment in favor of plaintiff for $6,-366, with interest in the sum of $629, and for $500 attorney fee as against Burnley and the light and water company; denying plaintiff's prayer for foreclosure and for sale of the property: adjudging title to the property to be in the incorporated town of Kiowa, but adjudging that the town should pay to plaintiff the sum of $2,500. From this judgment, after unsuccessful motion for new trial, plaintiff has brought the case here for review by petition in error with case-made attached. In the record and briefs the light and water company is variously referred to as Kiowa Water Works, Light & Power Company, Kiowa Ice, Light & Water Company, and Kiowa Light & Water Company. It will be hereafter referred to as Kiowa Water Works, Light & Power Company, as it is designated in the franchise ordinance.

James B. McDonough for plaintiff in error.

Guy L. Andrews, for defendants in eror.

Opinion by LOGSDON, C. There are 16 assignments of error in the petition in error, but these are reduced to and covered by nine propositions in the brief and argument of plaintiff. As stated by plaintiff at page 37 of its brief:

"The principal questions arising on the record relate to (1) the power of the Town of Kiowa to sell its water and light plant to the Kiowa Ice, Light & Water Company; (2) the right of the latter company to mortgage all the property to E. G. Burnley for the purpose of securing said Burnley for the money advanced to said company by said Burnley; (3) the validity of the collateral notes and mortgages heretofore described; (4) the plaintiff had nothing whatever to do with any of the proceedings before the Corporation Commission; (5) the notes and mortgages were in due form and valid and binding; the plaintiff was entitled to a decree for the full amount of the indebtedness against Burnley and the Kiowa Ice Light & Water Company and also to foreclose the lien of the mortgages; (6) the plaintiff was entitled to a decree for an attorney's fee as prayed in the petition; (7) the Town

of Kiowa is estopped to deny the relief for which plaintiff prays, and estopped to deny the validity of its own contract and its own ordinances; (8) the Corporation Commission had not power to impair the obligation of the contracts in said notes and mortgages: (9) and finally the said Corporation Commission could not deprive the plaintiff of its property without due process of law, in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States."

At page 39 the first proposition relied on for reversal is thus stated:

"The Incorporated Town of Kiowa had the power and right to make the contract with Milo T. Crane and E. G. Burnley, and also the power to convey the water and light plant to the Kiowa Ice, Light & Water Company."

Manifestly the second statement in this proposition is the keystone in the arch of plaintiff's argument. The correctness of the first statement does not include or establish the correctness of the second statement as a necessary corollary, but the correctness of the second statement may include the correctness of the first statement, and render available the arguments made under the other eight propositions. If the second statement is found to be incorrect then the first statement becomes wholly immaterial, and the arguments under the other eight propositions become futile because the basis for their support has fallen. Because of the manifest importance of this second statement, and the dependence of all other propositions on its correctness, it will be first considered.

"The Incorporated Town of Kiowa had * * * the power to convey the water and light plant to the Kiowa Ice, Light & Water Company."

That this is the pivotal question in the case, and so regarded by plaintiff, is shown by the language used in opening its argument. A quotation is made from the decision of the trial court as follows:

"In my opinion, the statutes of this state do not authorize a municipality to sell a water works system. I think that a municipality can sell property that has not been dedicated to public use, although it may have been purchased for the purpose of using it in a water works system, or property that has been abandoned for public use."

Concerning this plaintiff says:

"An erroneous opinion by the learned trial judge on this question caused him to fall into reversible error on the entire case."

In reaching a correct conclusion on the question here presented certain constitutional and statutory provisions are to be consid-

ered, and in their consideration their previous interpretation and application by this court should be adhered to where possible and apposite. Plaintiff relies on section 6, art. 18, Const., as authorizing a municipal corporation to exercise the same rights and powers, and as imposing on it the same legal and moral duties, as those pertaining to an individual. (Brief p. 44.) That section reads·

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

Article 18 comprehends the entire constitutional scheme for the delegation of powers to and the limitation of authority of municipal corporations, and is readily susceptible of four subdivisions. Section 6 is a part of the fourth subdivision and must be considered in connection with its correlated sections. These relate to the granting, extension, and renewal of franchises, limit their duration to 25 years, and prohibit the granting of exclusive franchises. When considered in connection with its context it is evident that this section does not justify the broad interpretation sought to be placed on it. It only authorizes municipal corporations to do those things which they might by franchise authorize persons, firms, and corporations to do. No one would seriously contend that a franchise might be granted for the business of selling public utilities, as that term is used in section 27, art. 10, Const. That section 6 is a grant of power to municipalities in furtherance of the public policy of the state is the effect of the holding of this court in Oklahoma City v. Oklahoma Ry. Co., 20 Okla. 1, 93 Pac. 48.

Therefore, since section 6, art. 18, Const., is a grant of power to municipalities in furtherance of public policy, and since the impairment or destruction of public service, or the diversion of public funds to purposes other than those for which they are voted, are clearly obnoxious to the public policy of the state, authority of the incorporated town of Kiowa to sell its water and light plant must be found, if it exists, in the language of some express statute. It is well settled that municipal corporations possess only such powers as are expressly granted. O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla. 738, 124 Pac. 19; In re Town of Afton, 43 Okla. 720, 144 Pac. 184; Town of New Butler v. Tucker, 54 Okla. 182, 153 Pac. 628; City of Enid v. Warner-Quinlan Asphalt Co., 62 Okla. 139, 161 Pac. 1092. In Dillon on Municipal Corporations (4th

Ed.) vol. 1, p. 145, the rule followed in the above cases is thus stated:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. * * * Neither the corporation or its officers can do any act, or make any contract, or incur any liability, not authorized thereby or some legislative act applicable thereto. All acts beyond the scope of the powers granted are void."

Reliance is placed on the second subdivision of section 4762, Comp. Stat. 17921, which reads:

"The board of trustees shall have the following powers, viz.: * * * Second, To purchase, hold or convey any estate, real or personal, for the use of the corporation, so far as such purchase may be necessary to carry out the objects contemplated by this chapter."

There is a clear distinction, recognized by practically all authorities, between property purchased and held by municipal corporations for the use of the corporaiton as an entity, and that purchased and held by such corporation for the public use and benefit of its citizens. In other words, its title to and power of disposition of property acquired for strictly corporate uses and purposes, are different from its title to and power of disposition of property acquired for and actually dedicated to the public use of its inhabitants. As to the former class the power of the corporation to dispose of it is unquestioned. The rule is different as to the latter class. It is only when the public use has been abandoned, or the property has become unsuitable or inadequate for the purpose to which it was dedicated, that a power of disposition is recognized in the corporation. 19 R. C. L, p. 172, par. 78; Tiedeman on Mun. Corp., sec. 208; 28 Cyc. p. 623, par. 3; 2 Dillon on Mun. Corp., sec. 575. And the granting of a franchise or the making of a contract for the exercise of the public functions to which the property was originally dedicated is not an abandonment. Tonkawa Milling Co. v. Town of Tonkawa, 15 Okla. 672, 83 Pac. 915; Moomaw et al. v. Sions, 96 Okla. 202, 220 Pac. 865. That subdivision 2 of sec. 4762, supra, has reference to the first class of property above mentioned seems clear from the language of the limiting phrase, "for the use of the corporation." That this section of the statute, if given the construction contended for by

plaintiff, would be in conflict with section 27, art. 10, Const., seems too clear for argument. This constitutional provision, so far as material here, reads:

"Any incorporated city. or town in this state may, by a majority of the qualified pr perty taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities or for repairing the same, to be owned exclusively by such city."

The grant of power to municipal authorities made by the people at any election held pursuant to this provision is expressly limited by the provision itself to public utilities "to be owned exclusively by such city." If municipal authorities are thus expressly prohibited from selling an interest in such public utility, even for the purpose of effectuating competent management and control, it must follow indubitably that the larger power of complete disposition is not to be implied. And the reason for this is obvious. It would open a door for the exploitation of the public through collusive sales of municipally owned public utilities. Not that this result would follow in any particular case, but that it might do so, is sufficient reason for the public policy which forbids it. The incorporated town of Kiowa acquired its water and light plant through a bond issue in conformity with the provisions of section 27, supra. It is therefore concluded that no express or implied power has been vested in municipal authorities in this state to sell or otherwise dispose of a municipal water and light plant, acquired under section 27, art. 10, Const., unless the same has been abandoned as a public utility or has become inadequate and is not adapted to the public uses for which it was originally intended.

Plaintiff cites a great number of cases from other states which it contends support its position contrary to the conclusion here reached. These cases are too numerous to review individually, but they have been examined carefully. Some of them do not, in the judgment of this court, justify the meaning imputed to them. Others fail to differentiate the two classes of public property over which municipal authorities exercise control, as above pointed out herein. A few are based upon express statutes of those jurisdictions. Thus, in MacDonald v. Price, et al. (Utah) 146 Pac. 550, the first paragraph of the syllabus, relied on by plaintiff, reads:

"Though property such as streets, alleys, etc., held for strictly- corporate purposes, may not be sold. a lighting plant owned by a city is held in a proprietary right and may be sold."

An examination of this case discloses that there is an express statute in Utah authorizing a sale of municipally owned public utilities for not less than the amount of outstanding bonds issued for their construction. So it is concluded that in the disposition of the instant case only our own constitutional and statutory provisions and the applicable decisions of this court should be looked to for guidance, aided by the application of well settled general rules.

The conclusion here reached as to want of power of municipal authorities in this state to sell adequate and suitable public utilities, dedicated to the use of the inhabitants, who have burdened themselves with taxation for a long number of years in order to create a fund for their construction, is not deemed to be in conflict with any decision of this court cited or quoted from in plaintiff's brief. However, those cases will be briefly reviewed.

In Owen et al. v. City of Tulsa et al., 27 Okla. 264, 111 Pac. 320, and in Sharp v. City of Guthrie, 49 Okla. 213, 152 Pac. 403, the decisions were based upon charter provisions of those cities which authorized the sale of unused and unimproved portions of public parks.

In Fretz v. City of Edmond, 66 Okla. 262, 168 Pac. 800, and in City of Oklahoma City v. Hoke, 75 Okla. 211, 182 Pac. 692, it was decided that in the operation of municipal water systems the city authorities act in a business and administrative rather than in a governmental capacity.

In Atlas Life Ins. Co. v. Board of Education, 83 Okla. 12, 200 Pac. 171, the property involved had been abandoned as unsuitable for school purposes long before the action complained of was taken.

Nitsche v. State Security Bank of Zanesville, 69 Okla. 37, 170 Pac. 234, involved the assignability and enforcement of liens for street improvements against property benefited thereby.

This leads to a consideration of a second phase of this transaction as presented by the record which is comprehended by the proposition now under consideration. Certain matters connected with the sale of this plant were submitted to the qualified voters of Kiowa under the referendum provisions of article 18, Const. In reference to this feature of the case plaintiff states, at page 43 of its brief, as follows:

"The incorporated town and the Kiowa Ice, Light & Water Company complied with sections 5a and 5b of article 18 of the Constitution of Oklahoma. It is undisputed that the matter of granting a franchise, which included the sale of the property, was submitted to a vote of the electors of the incorporated town, and was carried by a majority of about 100, only 11 votes being against the sale and the granting of the franchise."

Sections 5 a and 5 b are as follows:

"Sec. 5a. Vote by People—Election. No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than 25 years.

"Sec. 5b. Petition for Election. Whenever a petition signed by a number of qualified electors of any municipal corporation equal to 25 per centum of the total number of votes cast at the next preceding general municipal election demanding that the franchise be granted, extended, or renewed, shall be filed with the chief executive officer of said corporation the chief executive officer shall, within ten days thereafter, call a special election, at which he shall submit the question of whether or not such franchise shall be granted, extended, or renewed, and if, at said election, a majority of the said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city."

The ordinance which was submitted to the people, and which was adopted at the election held March 11, 1918, is known as "Ordinance No. 103." The title of this ordinance is in this language:

"An Ordinance granting to the Kiowa Water Works, Light & Power Company, its successors and assigns, the right to construct, maintain and operate a system of works for the conveyance of water and electricity to all parts of the Incorporated Town of Kiowa, Oklahoma, to furnish water, light, heat and power to said town and its inhabitants."

Following this title, and preceding the enacting clause, is this preamble:

"Whereas, Milo T. Crane has offered to purchase for the purpose of operating the same the water works and electric light system owned by the Incorporated Town of Kiowa, Okla., and as a condition thereto provides that an ordinance be passed granting a franchise to the Kiowa Water Works, Light & Power Company, its successors and assigns, and,

"Whereas, It is necessary to as quickly as possible procure a supply of water and electric lights for said incorporated town and its inhabitants, and to that end, it is the desire of the Kiowa Water Works, Light & Power Company that a franchise be granted to it for the purpose of enabling it to supply said Incorporated Town of Kiowa, Okla., and its inhabitants with water and electric lights."

The ordinance then grants a franchise in the usual terms for a period of 20 years to the Kiowa Water Works, Light & Power Company, "to erect, maintain, extend and operate a system of water works, water mains and pipes. meters, fire plugs, poles, wires, and all necessary apparatus and appurtenances within the corporate limits of said town as now existing, or may be hereafter extended, for the purpose of supplying water, generating electricity and distributing the same to said town and public generally, and for said purpose to enter upon or below and use streets, alleys, avenues, lanes, boulevards, sidewalks, and public areas or grounds of the town or under control or jurisdiction thereof, and erect. maintain, extend and operate such water mains and water pipes and meters and fire plugs, wires, cables and all necessary apparatus and appurtenances, subject to the terms and conditions hereinafter provided."

Section 11 authorizes the assignment of the franchise upon the express condition that the assignee accepts all of the terms and conditions of the ordinance. Section 12 requires the written acceptance of the ordinance by the Kiowa Water Works, Light & Power Company within five days. It is admitted that this written acceptance was filed with the town clerk.

It is upon the terms of this ordinance and its preamble, aside from general statutes, that the plaintiff relies to support the validity of the deed and bill of sale thereafter executed by the municipal authorities conveying all real and personal property which appertained to the municipally owned water and light plant to the Kiowa Water Works, Light & Power Company. Since it has been determined that no express or implied statutory power existed authorizing this sale, the conveyances in question must be considered in their relation to ordinance No. 103. In Mitchell et al. v. Tulsa Water, Light, Heat & Power Co., 21 Okla. 243, 95 Pac. 961. the first paragraph of the syllabus reads:

"Where the language of an ordinance granting to a water works company a franchise is ambiguous and reasonably susceptible of two constructions, the construction that is more favorable to the public should be adopted."

Neither the preamble nor any provision of the ordinance informed the voters as to the price which the town should receive for its water and light plant. This plant cost the town of Kiowa $57,000, of which $49,000 was proceeds of a bond issue, and the Kiowa Waterworks, Light & Power Company paid for it $2,500 in cash, and $2,500 in light and water service to the town.

The deed and bill of sale relied on are in identical language except as to the kind and character of property conveyed. Both instruments recite as preamble the proceedings leading up to their execution, including an election held December 31, 1917, resolutions of the board, and the referendum on and adoption of ordinance No. 103. Section 1 of each instrument reads:

"Whereas, Heretofore, to wit: On the 3rd day of December, 1917, the board of trustees of the Incorporated Town of Kiowa, Okla., were authorized to sell its water works system and electric light plant and to grant to the purchasers all of the rights, titles, interest and equities of said town in the operation and lease of the plants that the town might have, so far as it could be legally done, and to grant to such purchasers such franchise as might be legal and proper."

It thus appears that when the matter was first submitted to the people on December 3, 1917, they by their votes authorized the board of trustees to sell all of the rights, titles, interest and equities of the town "in the operation and use of the plants * * * so far as it could be legally done." Thereafter, on March 11, 1918, the people by referendum adopted ordinance No 103, being informed by the preamble thereof that "Milo T. Crane has offered to purchase for the purpose of operating the same the water works and electric light system" upon condition "that an ordinance be passed granting a franchise to the Kiowa Water Works, Light & Power Company, its successors and assigns." The deed and bill of sale were duly placed of record in Pittsburg county.

In determining the extent of the power granted by the people in these referendum elections it is necessary to consider the extent and compass of the propositions to which they were asked to give their assent. It is too clear for argument that at both elections the people were asked to give their assent to a conveyance of the water and light plant "for purpose of operating the same,"

and the purpose of operating it was unquestionably understood to mean the furnishing of public service as originally contemplated by the bond issue for its construction. The deed, the bill of sale, and ordinance No. 103 constitute one entire contract authorized by the people to be entered into by the board of trustees with the Kiowa Water Works. Light & Power Company. Therefore, the title which the company acquired to the property was such title only as the board of trustees was authorized by the voters to convey. It could not be conveyed free of the use for which it was constructed and to which it was adapted, and to which use it had been dedicated. It could not be conveyed so as to defeat the right of repurchase by the town as authorized by Comp. Stat. 1921, sec. 4767. All proceedings connected with this transaction are matters of public record and are notice to the world of the limitations of the conveyance (Comp. Stat. 1921, sec. 4797), and of the public use with which the title is burdened. Public policy forbids that a public utility such as this shall be impaired or destroyed willfully, or that private rights shall be acquired therein the enforcement of which will have this result.

It is therefore concluded that the municipal authorities of the incorporated town of Kiowa had no constitutional or statutory authority, either express or implied, to sell unconditionally the municipally owned water and light plant. It is further concluded that by virtue of the referendum elections they were authorized to enter into the contract which was made with the Kiowa Water Works, Light & Power Company, but that such contract did not authorize that company to mortgage or otherwise convey the property except as provided in section 11 of ordinance No. 103, which limitation was accepted in writing by the company, and is binding on it and on all persons claiming under it. This acceptance is explicitly recited in the face of the deed and of the bill of sale on which plaintiff relies.

This conclusion renders unnecessary a consideration and discussion of the other propositions urged by plaintiff in its brief.

The judgment of the trial court should have been in favor of plaintiff for foreclosure of its mortgage and for a sale of the property upon condition that the purchaser take the property burdened with the condition that it be operated as a public utility as originally contemplated in the bond issue for its construction. That portion of the judgment requiring the incorporated town of Kiowa to pay to the Kiowa Water Works,

Light & Power Company the sum of $2,500 within six months should be vacated.

For the reasons herein stated this cause should be remanded to the trial court with directions to correct and amend its decree in the two particulars pointed out in the last preceding paragraph, and for such further proceedings as may be necessary for carrying into effect such amended decree in conformity with the views herein expressed. In all other respects the decree of the trial court should be affirmed.

By the Court: It is so ordered.