COUNTY COMMISSIONERS — LEASING TO PRIVATE INDIVIDUALS FOR PRIVATE PURPOSES Boards of County Commissioners do not have authority to lease to private individuals for private purposes real estate acquired or held by the county for county farm or poor farm purposes even though such real estate is no longer needed for county farm or poor farm purposes. The Attorney General has had under consideration your letter in which you inquire in effect: May a board of county commissioners lease to private individuals for private purposes real estate acquired or held for county farm or poor farm purposes where such real estate is no longer needed for such purposes? This office has been requested three times in the past to give opinions on whether such lands could be leased out for various purposes. Our answers, all in the affirmative, were written to the Honorable Victor Eckler; County Attorney, Jefferson County, on March 27, 1937; to the Honorable Ed A. Edmondson, County Attorney, Muskogee County, on November 5, 1949; and to the Honorable H. M. Shirley, County Attorney, Coal County, on March 29, 1952. In view of legislation passed since 1952, and a recent decision by our Supreme Court, we feel a new appraisal of the situation is in order. In Tulsa Exposition and Fair Corporation v. Board of County Commissioners of Tulsa County, Okl., 468 P.2d 501 (1970), the question was presented as to whether a county could enter into a lease agreement whereby a private charitable corporation would be granted management, control, maintenance and operation of a county fair on improved real estate belonging to the county with the county contributing $25,000.00 per year for a term of fifty years. The Court in its opinion reiterated (with citations in each case) the following rules of law: 1. "Counties have only such authority as is granted by statute. . . . 2. "The Board of County Commissioners in exercising corporate powers is limited to those fields expressly assigned to such subdivisions of the state by the legislature. . . . 3. "Public officers possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law. . . . 4. "It is within the legislative power to define the duties among the several county officers and to regulate county governmental affairs. . . . 5. "Boards of County Commissioners derive their powers and authority wholly from the statutes, and acts performed by them must be done pursuant to authority granted by valid legislative action." The Court then concluded: "While we deem it unnecessary to decide whether 19 O.S. 1 [19-1] (1961) as a general proposition authorizes counties to lease lands owned by them, in our opinion the statute does not authorize the county commissioners to enter into the lease agreement under consideration." The statute referred to by the Court in the preceding paragraph specifies the general powers granted to counties and reads as follows: "Each organized county within the State shall be a body corporate and politic and as such shall be empowered for the following purposes: 1. To sue and be sued. 2. To purchase and hold real and personal estate for the use of the county, and lands sold for taxes as provided by law. 3. To sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants. 4. To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of corporate or administrative power. 5. To exercise such other and further powers as may be especially provided for by law." Based on this decision, it would seem to us that there is no authority under the general statute for a board of county commissioners to enter into the lease agreement it is contemplating in your case. Restrictions on counties leasing out real estate formerly used for poor farm purposes would seem to be even more confining than on some other lands of the county in view of the fact that the Legislature specifically empowered county commissioners to sell county farm or poor farm lands in certain situations by 56 O.S. 121 [56-121] (1961), which reads: "The board of county commissioners of any county of this state is hereby authorized and empowered to sell and convey any real estate deeded to or held by such county for the purpose of county farms or poor farms, when in the opinion of said board of commissioners such real estate is not needed, is unsuitable or inconvenient for such purposes, such sale to be in the manner hereinafter provided." Since 56 O.S. 121 [56-121] (1961), is a special statute we must look to it first for authority or for conflict with the general statute, anyway, before we can consider the general statute, 19 O.S. 1 [19-1] (1961), as authority. See Reubin v. Thompson, Okl.,406 P.2d 263 (1965), where we find in the first paragraph of the syllabus by the Court: "A statute which is enacted for the primary purpose of dealing with a particular subject, and which prescribes the terms and conditions of that particular subject matter, prevails over a general statute which does not refer to the particular subject matter, but does contain language which might be broad enough to cover the subject matter if the special statute was not in existence ." We acknowledge that our Supreme Court has held that the word "convey" could mean lease as well as sell. Atlas Life Ins. Co. v. Board of Education,83 Okl. 12, 200 P. 171 (1921). Indeed, we relied on the Atlas Life case significantly in our earlier opinions. A critical second look at the case, however, makes us wonder if it might not have always been more authority against our earlier decisions than supportive of them, since at page 173 it contains the following language: "It may be conceded that, if the land involved in the case at bar was being held by the board for certain prescribed public purposes, it could not be applied to purposes other than those indicated by the act fixing the limitation." In the case of county farms or poor farms certainly the land would be held for "certain prescribed public purposes" which apparently was not the situation of the land being leased in the Atlas Life case. We are also impressed by the fact that the "board" involved in the Atlas Life case was a board of education, whose powers as construed by our Supreme Court at that time were different from the powers of counties as set out by our Court in the Tulsa Exposition and Fair Corporation case, supra. We do not feel that Section 121, supra, clearly authorizes such leasing as you inquire about. In considering statutes which are not clear to us we are obliged to consider legislative intent first of all. Edmond Independent School District No. 12 v. Oklahoma Tax Commission, 192 Okl. 241,135 P.2d 57 (1943). In 1959, our Legislature enacted 19 O.S. 127 [19-127] (1961), which reads: "The board of county commissioners of any county of this State having a population of one hundred thousand (100,000) or more, as determined by the last Federal Decennial Census or any subsequent Federal Decennial Census, is hereby authorized and empowered to hold, own, or use for any lawful county purpose, any real estate deeded to or held by such county for the purpose of county farms or poor farms, when in the opinion of the board of county commissioners such real estate is not needed, is unsuitable, or inconvenient for such purpose; provided that nothing contained in this section shall prevent the said county from selling the said property as provided by law, and the power to hold, own, and use said property for any lawful county purpose shall be in addition to the power to sell said property as provided in 56 O.S. 121 [56-121] — 56 O.S. 126 [56-126] (1951) inclusive." Obviously, the Legislature felt that prior to the passage of this statute, counties did not have power to use real estate no longer needed for county farms or poor farms even for other lawful county purposes. If they could not have used such property for lawful county purposes, how much less could they have leased such property to private individuals for private purposes. Even now the Legislature has limited the expansion of authorized uses set out in Section 127, supra, to counties having populations of 100,000 or more. In conclusion, we feel that there is no authority in either the general statutes found in Title 19 or the special statutes found in Title 56 which would permit such leasing as you inquire about. It is therefore the opinion of the Attorney General that your question be answered in the negative. A board of county commissioners does not have authority to lease to private individuals for private purposes real estate acquired or held for county farm or poor farm purposes where such real estate is no longer needed for such purposes. To the extent that our previous opinions may be in conflict with this opinion, our previous opinions are overruled. (Norman Cannon)